for purposes of establishing reasonable suspicion, so long as the dispatcher received the report, which indisputably occurred, such dispatcher knowledge is attributable to Peterson.

Given the short time frame between the REDDI report and Peterson's sighting of the described gold flat bed truck, Defendants believe hot pursuit occurred and that the reasonable suspicion existed that the driver of the truck committed DUI.

Brown may contend this was not "hot pursuit" because he was unaware that he was being pursued, as he testified in his deposition.[134] This testimony is of questionable validity because (1) the video cam shows the gold flat bed truck pulling into the driveway and the driver's door opening and closing while the police lights were illuminated and (2) Brown admitted, as shown on the processing room videotape, that he saw Peterson outside the home.[135] Given these facts, it is difficult to

_____

his police report.   Exhibit AS at Tr. 41.

[134] Exhibit S at Tr. 56-57.  Mr. Ellar also believes that Plaintiff is lying when he denies drinking and driving immediately before running into the house.  Exhibit AS at Tr. 45, but see at Tr. 72, where he "guesses" he was not drinking.  This guess was recanted at Tr. 102 wherein he restates his belief that Plaintiff lied on this point.  If Plaintiff was drinking and driving it is more likely that he would have run from the police as a result.

[135] "You were still coming up the street. I saw where you was."   Exhibit Q at Tr. 61-62.

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 36 of 65

believe that Brown did not hear Peterson tell him to stop before he entered the home.   Indeed, Plaintiff's expert, James Ellar, testified that Plaintiff likely ran into the house because he knew the police were chasing him for DWI.[136]   In any event, an objective test should be employed, and given the short time frame, a hot pursuit occurred.

The question, thus, becomes, can an officer lawfully pursue a fleeing DUI suspect into his home to conduct an investigatory stop based upon reasonable suspicion?

Defendants have found no Ninth Circuit case on point. However, the Second Circuit, Seventh Circuit, and D.C. Circuit have all approved hot pursuit entries based upon reasonable suspicion, though not specifically for DUI.[137]   One state court has permitted such hot pursuit on a DUI.[138]

Though there is some contrary authority, the better reasoned conclusion is that such hot pursuit should be permitted, at least for serious crimes where exigent circumstances exist.   As one court has stated "The enforcement of our criminal laws, including serious traffic violations, is not a game where law enforcement officers are 'it' and one is

---

[136] Exhibit AS at Tr. 46-50.

[137] See, nn.114 & 115.

[138] See, n.117.

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 37 of 65

'safe' if one reaches 'home' before being tagged."[139]  If such evasions were permitted, every attempt by the police to stop a vehicle could potentially result in a race to the driver's home.

There can be no doubt that DWI is a serious crime and that exigent circumstances existed in the present case.  Not only was Brown's blood alcohol level metabolizing with the passage of time but allowing him to remain in the home while a warrant was obtained would have provided him with further opportunity to contaminate the evidence by continuing to drink, something he did anyway despite the best efforts of Peterson.

Furthermore, Peterson's intrusion was minimal.  He did not break down either the front door nor bathroom door. Peterson waited until Brown could be persuaded to leave the bathroom, though with hindsight, breaking down the door would have eliminated any defense by Brown of contamination.

Defendants believe that probable cause existed to arrest Brown for DUI before Peterson entered the house. Several courts have held that erratic driving combined with fleeing is enough to infer intoxication.[140]  Assuming probable cause to arrest for DUI, most courts permit hot pursuit into a

---

[139] <u>Gasset v. State</u>, 490 So.2d 97, 98-99 (Fla. Dist. Ct. App. 1986), <u>rev. denied</u>, 500 So.2d 544 (1986).

[140] <u>See</u>, n.122.

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
*Brown v. Peterson, et al.*, Case No. 3:05-cv-0002 [TMB]
Page 38 of 65

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

home to make an arrest.[141]

In sum, no constitutional right was violated by Peterson's entry into the home.

       C.    The Law Was Not Clearly Established that Officer Peterson Was Prohibited From Pursuing Plaintiff Into His Home.

Peterson reasonably believed he was pursuing an intoxicated driver who had been driving recklessly a few minutes before he saw the subject vehicle. Peterson also reasonably believed that the driver was fleeing from him given the driver's failure to stop outside the vehicle when the police overhead lights were on and Peterson told Plaintiff to stop.

Exigent circumstances existed since evidence of intoxication would dissipate and could be contaminated while a warrant was obtained. The crime was serious and a wrongdoer would escape punishment if the evidence was compromised.

Peterson did not know the basis for the REDDI report other than reckless driving was involved. The dispatcher did not obtain nor inquire of the caller why she thought the driver may be intoxicated. Peterson had to make a split second decision to follow or not follow Plaintiff into the house. He did not have time to determine the basis for Laurie Skonberg's belief that the driver was intoxicated or whether that

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

---

[141] <u>See</u>, nn.98 & 99.
Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
*Brown v. Peterson, et al.*, Case No. 3:05-cv-0002 [TMB]
Page 39 of 65

information had been passed on to the dispatcher.  Some REDDI callers may have seen evidence of intoxication before the driver entered the vehicle later driven.

Peterson's liability should not be dependent upon the fortuity of whether the caller had inarguable probable cause to believe the driver was intoxicated.  So long as Peterson had reasonable suspicion to believe a DWI had been committed, he should not be prohibited from a hot pursuit into the house.

The law was not clearly established that Peterson did not have authority to proceed into the house based upon reasonable suspicion to make an investigatory stop for DUI. Case law and a respected legal treatise support this view.

As to whether Peterson had probable cause to arrest for DUI prior to the entry to the home, Defendants have cited authority that supports the view that erratic driving and fleeing is sufficient to establish probable cause.  Probable cause does not, of course, mean sufficient evidence to obtain a conviction.  Brown may cite contrary authority.[142]

_____

[142] Such as Saucier v. State, 869 P.2d 483 (Alaska App. 1994) (crossing over center line, admitting to a "couple of beers", and a "normal" odor of alcohol insufficient to establish probable cause); but see, Seibert v. Municipality of Anchorage, 2001 WL 864165 at 3 (Alaska App.) (holding that Saucier involved "minor driving errors" and that more serious driving errors combined with a stronger smell of alcohol coupled with walking deliberately, enough to establish probable cause).  Unpublished opinions may be cited for whatever persuasive powers they

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
*Brown v. Peterson, et al.*, Case No. 3:05-cv-0002 [TMB]
Page 40 of 65

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

The law was not clearly established that an officer receiving a REDDI report that included reckless driving could not reasonably believe he had probable cause to arrest for DUI. No legal authority required the officer to determine the basis for the caller's conclusion that the driver was drunk. Peterson could reasonably assume he had probable cause to arrest for DWI.

With such authority to arrest for DUI, and the majority of jurisdictions permitting hot pursuit into a home on such authority and the Ninth Circuit silent on the issue, at a minimum, the law was not clearly established that Peterson could not enter the home under these circumstances.

For these reasons, the officers are entitled to qualified immunity.

> D.   Plaintiff's First Cause Of Action:
>      Unlawful Entry, Seizure And Arrest
>      Under 42 U.S.C. § 1983 Should Be
>      Dismissed.

The only § 1983 claim against the two officers is set forth in Plaintiff's First Cause of Action.[143] Since the officers had a reasonable suspicion and even probable cause to detain and arrest Plaintiff by entering his house without a warrant, this claim should be dismissed. Once Plaintiff emerged

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

possess.  McCoy v. State, 80 P.3d 757, 764 (Alaska App. 2003).

[143] Complaint dated January 3, 2005 at 6-7.

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 41 of 65

from the bathroom with undisputed signs of intoxication, probable cause was further established for the arrest.

The officers did not believe that Plaintiff was asserting an excessive force claim given the representations by Plaintiff's attorney that use of force would not be an issue at trial and that the report of Defendant's expert would be rendered moot.[144] However, after receipt of Plaintiff's expert reports which contain opinions of excessive force, it became apparent that Plaintiff is advancing an excessive force claim under 42 § 1983 even though not specifically pleaded. Therefore, this excessive force claim will be addressed.

IV.    EXCESSIVE FORCE CLAIMS SHOULD BE DISMISSED.

A.    Introduction.

The facts are not essentially in dispute regarding the circumstances leading up to the use of pepper spray by Peterson and Holden.

At the time Peterson used the pepper spray, the following had occurred. Plaintiff refused Peterson's repeated requests to come out of the bathroom. His scared wife also pleaded with him, to no avail. Finally, a drunken Plaintiff emerged from the bathroom. Plaintiff then lied to Peterson and told him he was not driving the truck.

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

---

[144] Plaintiff's Motion to Re-Open Discovery dated August 23, 2007 at 2.

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
*Brown v. Peterson, et al.*, Case No. 3:05-cv-0002 [TMB]
Page 42 of 65

Plaintiff then refused two orders.  He refused to sit down and refused to put down the beer bottle.  When told he was under arrest and warned not to drink the beer or he would be pepper sprayed, Plaintiff invited Peterson to pepper spray him.  Peterson did so as Plaintiff continued to drink the beer.

Peterson explained at his deposition why he used pepper spray as opposed to a hands-on technique:

> I took a lot of things into consideration. One, that Mr. Brown was intoxicated.  He was being belligerent.  I was concerned about my conservation of evidence.  I was the only officer in the room at the time and there were several other people besides Mr. Brown.  Mr. Brown also had a bottle in his hand at the time which I know from past history from my experiences that it can be used as a weapon.  Injuries sustained by bottles can be quite serious.  Having taken all this into consideration, I decided to go with my pepper spray versus starting first with hands-on and then going to the pepper spray.[145]

Plaintiff's expert, Edward Mott, testified that he has seen individuals either getting hit by bottles or having been hit by bottles on 10 occasions.  Most were beer bottles.  He remembers seeing "a lot of blood."  The injuries ranged from gashes two to six inches in length to concussions wherein the

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

---

[145] Exhibit I at Tr. 209.

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 43 of 65

individual was in a coma for days.  He considers a beer bottle a dangerous weapon.[146]

As to Holden, a struggle was ongoing when Holden arrived.  During the struggle in which Peterson was attempting to handcuff Plaintiff, Holden pepper sprayed Plaintiff to obtain compliance with the handcuffing.  Compliance was obtained after this second use of pepper spray.

B.    Ninth Circuit Cases.

The use of pepper spray to bring an arrestee under control does not violate any constitutional right.  However, where the arrestee has surrendered and is rendered helpless, any reasonable police officer would know that the use of pepper spray would constitute excessive force.[147]  Similarly, use of a chemical irritant on a third party who was actively interfering with another's arrest does not violate any constitutional right.[148]

Using pepper spray on a handcuffed arrestee who is merely trying to roll over and stand up also is objectively

---

[146] Exhibit AT at Tr. 29-33.

[147] Headwaters Forest Defense v. County of Humboldt, 276 F.3d 1125, 1130 (9th Cir. 2002), cert. denied, 537 U.S. 1000 (2002) (quoting LaLonde v. County of Riverside, 204 F.3d 947, 961 (9th Cir. 2002)).

[148] Jackson v. City of Bremerton, 268 F.3d 646, 651-53 (9th Cir. 2001).

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 44 of 65

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

unreasonable and in violation of constitutional rights.
However, under such circumstances, when the arrestee continued
to resist and was not completely subdued, the right was not
clearly established in 2000 and the officer was entitled to
qualified immunity.[149]

        C.    Other Cases.

       Other cases are in accord with the principle that
pepper spray may be used to obtain control over an arrestee
without any constitutional violation. A female motorist,
stopped for going five miles per hour over the speed limit and
failing to have on a seatbelt, who refused to exit the vehicle,
was properly pepper sprayed to obtain her cooperation.[150]
Similarly, a motorist stopped for speeding who refused to exit
his vehicle after being informed he was under arrest, did not
have his constitutional rights violated by being pepper sprayed.
Even if the use of pepper spray was objectively unreasonable,
the officer would be entitled to qualified immunity.[151]

---

[149] Harveston v. Cunningham, 216 Fed.Appx. 682, 2007 WL 34424
(9th Cir.). This case was not selected for publication.
However, under FRAP 32.1 since the decision was issued after
January 1, 2007, it may properly be cited. A copy of this
decision is attached as Exhibit AU.

[150] Mecham v. Frazier, 500 F.3d 1200, 1204-1205 (10th Cir.
2007).

[151] Lawyer v. City of Council Bluffs, Iowa, 240 F.Supp.2d
941, 953-954 (S.D. Iowa 2002), aff'd by 361 F.3d 1099 (8th Cir.

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary
Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 45 of 65

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

There is a case factually similar to this case.  A
police officer reasonably believed that the plaintiff needed to
go to the hospital due to a drug overdose.  For 20 minutes the
police officer tried to persuade the intoxicated plaintiff to go
to the hospital.  Plaintiff refused and continued to drink beer
from a bottle.  The officer warned the plaintiff he would be
pepper sprayed if he continued to refuse.  Plaintiff told the
officer he would have to spray him and the officer did so.
Under these circumstances, the court found no excessive force
was used.[152]

A Fourth Amendment claim of excessive force is
analyzed under the <u>Graham v. Connor</u>[153] test.  The <u>Graham</u> factors
are (1) the severity of the crime, (2) whether the suspect
immediately threatens the safety of the police or others, and
(3) whether the suspect is actively resisting or fleeing
arrest.[154]

       D.    No Constitutional Violation Occurred By
            The Officers' Use Of The Pepper Spray.

Plaintiff's expert, James Ellar, testified that it was

---

2004).

[152] <u>Monday v. Oulette</u>, 118 F.3d 1009, 1104-05 (6th Cir. 1997).

[153] 490 U.S. 386 395-396 (1989).

[154] <u>Id.</u>

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary
Judgment
<i>Brown v. Peterson, et al.</i>, Case No. 3:05-cv-0002 [TMB]
Page 46 of 65

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

reasonable for Peterson to use the pepper spray when he did and
that he (Ellar) may have done so himself.[155]  Plaintiff's other
expert, Edward Mott, agreed that Peterson did not use excessive
force when the pepper spray was used.[156]  Mr. Mott also testified
that Holden did not use excessive force when he pepper sprayed
Plaintiff because Holden would have assumed a lawful arrest was
occurring and that Plaintiff was actively resisting that
arrest.[157]

       The case law supports the view that if an arrestee is
resisting arrest or failing to cooperate, pepper spray may be
used to facilitate the arrest and obtain cooperation.  Peterson
and Holden's use of pepper spray under the circumstances did not
constitute excessive force.

       Applying the <u>Graham</u> factors also supports the
conclusion that no excessive force was used:   (1) DWI is a
serious offense that has led to serious injuries to the offender
and others; (2) Plaintiff posed an immediate threat to Peterson

---

       [155] Exhibit AS at Tr. 52-54.

       [156] Exhibit AT at Tr. 50-51.  Mr. Mott assumed, for purposes
of this answer, that Peterson was lawfully entitled to be in the
house.  If not, Mr. Mott's view is that no force should have been
used since Peterson should not have been in the house.  However,
Mr. Mott changed his opinion upon questioning by Plaintiff's
attorney at Tr. 88.

       [157] Exhibit AT at Tr. 78-79.

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary
Judgment
*Brown v. Peterson, et al.*, Case No. 3:05-cv-0002 [TMB]
Page 47 of 65

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

because he picked up a dangerous weapon, the beer bottle, and refused to put it down; and (3) Plaintiff was actively resisting his arrest.

> E. The Law Was Not Clearly Established That Pepper Spray Could Not Be Used Under The Totality Of The Circumstances.

Even if this Court was to conclude that the use of pepper spray violated Plaintiff's rights by being excessive, the law was not clearly established that the officers could not use such force under the circumstances.

Peterson was faced with deciding how to handcuff a drunken Plaintiff who had refused to put down a dangerous weapon, the beer bottle. Proceeding "hands-on" would have increased the risk that Peterson would be hit by the bottle. The law was not clearly established that he should not have used pepper spray under these circumstances.

Holden saw Peterson struggling with Plaintiff and then he struggled with Holden as both tried to handcuff him. Under these circumstances, it was not clearly established that Holden could not use pepper spray to effectuate the arrest.[158]

---

[158] See, Davis v. City of Albia, 434 F.Supp.2d 692, 708 (S.D. Iowa 2006) (Police officer entitled to qualified immunity since law not clearly established that the use of pepper spray on a traffic offender who ignored a police directive and struggled during an arrest was unlawful); see also, Wagner v. Bay City, Texas, 227 F.3d 316, 324 (5th Cir. 2000) (officers entitled to

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 48 of 65

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

V.    MEDICAL CARE WAS NOT DENIED IN VIOLATION OF
      42 U.S.C. § 1983.

A.    Introduction.

Plaintiff's expert James Ellar has alleged that Plaintiff did not receive proper medical attention for an injury to his left foot.[159] This allegation is not set forth in Plaintiff's complaint.  However, Plaintiff's attorney confirmed that this theory was being advanced.[160]  Therefore, Defendants will address the contention believing a § 1983 claim is being made.

Plaintiff told the arresting officers that he had a bad right foot.[161]  However, during the booking process, Plaintiff asserted it was his left foot.[162]  Plaintiff's complaint about his left foot appears in the holding room videotape.[163]  Though Plaintiff complains about his left foot and appears to limp at times during the videotape, by the end of the

---

qualified immunity for pepper spraying a physically resistant arrestee).

[159] Exhibit AS at Tr. 108-109.

[160] Exhibit I at Tr. 216-217.

[161] Exhibit O at Tr. 19.

[162] Exhibit Q at Tr. 27.

[163] Exhibit P.

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
*Brown v. Peterson, et al.*, Case No. 3:05-cv-0002 [TMB]
Page 49 of 65

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

videotape Plaintiff is walking normally and not complaining.[164]

Plaintiff renewed his complaint about his left foot and paramedics were ultimately called to treat him.[165] It was determined that all Plaintiff needed was pain medication. This was obtained from the local hospital.[166] Plaintiff suffered no permanent injury as a result of his foot condition.

> B.  Plaintiff's Foot Condition Did Not
>     Constitute A Serious Medical Condition.

The Eight Amendment proscription on the infliction of cruel and unusual punishment requires ensuring that inmates receive adequate medical care.[167] Jail guards are prohibited from "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed".[168] However, liability occurs only when the defendant exhibits "deliberate indifference to serious medical needs."[169] This standard applies to pretrial detainees under the

---

[164] Exhibit P.

[165] Exhibit A at Tr. 126.

[166] Exhibit AV at Tr. 9.

[167] Farmer v. Brennan, 511 U.S. 825, 832 (1994).

[168] Estelle v. Gamble, 429 U.S. 97, 104-105 (1976).

[169] Id. at 104.

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 50 of 65

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707