FRANK S. KOZIOL, ESQ.
Attorney at Law
618 Christensen Drive
Anchorage, Alaska 99501
TEL: 907-258-7706
FAX: 907-258-7707
koziol@gci.net

Counsel for Defendants
FRANK PETERSON AND JEFF HOLDEN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SCOTT BROWN,<br><br>             Plaintiff,<br><br>         vs.<br><br>FRANK PETERSON, Individually and in His official capacity as a City of Kodiak Police Officer; JEFF HOLDEN, Individually and in his official capacity as a City Kodiak Police Officer; CITY OF KODIAK; and JOHN AND JANE DOES 1-10,<br><br>             Defendants. | ) <br> ) <br> ) <br> ) Case No. 3:05-CV-0002 [TMB] <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) MEMORANDUM IN SUPPORT OF <br> ) DEFENDANTS PETERSON'S AND <br> ) HOLDEN'S MOTION FOR <br> ) SUMMARY JUDGMENT <br> ) |

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . i

LIST OF EXHIBITS . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . 1

      I. EVENT FACTS. . . . . . . . . . . . . . . . . 1

      II. UNDERLYING LEGAL PROCEEDINGS. . . . . . . . 8

SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . 9

ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . 9

      I. NO COLLATERAL ESTOPPEL AGAINST
         DEFENDANTS FOR ANY DECISION BY
         THE STATE COURT. . . . . . . . . . . . . . 9

      II. NO FOURTH AMENDMENT VIOLATION OCCURRED
         WITH THE ENTRY INTO THE HOME. . . . . . . . 9

         A.   Introduction. . . . . . . . . . . . . . 9

         B.   Hot Pursuit. . . . . . . . . . . . . . 10

         C.   Imminent Destruction Of Evidence. . . . . 11

         D.   Peterson Had Reasonable Suspicion
            To Believe That Plaintiff Brown Had
            Committed A DUI And, Therefore, Was
            Lawfully Making An Investigatory
            Stop When Plaintiff Brown Fled. . . . . . 12

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

E.   Peterson Could Lawfully Enter
Plaintiff's Residence Without
A Warrant Based Upon Investigatory
Stop Authority While In Hot Pursuit. . . 15

F.   Peterson Could Lawfully Enter
Plaintiff's Residence Without
A Warrant Based Upon Probable
Cause To Arrest Plaintiff For
Driving Under The Influence. . . . . . 17

III. THE OFFICERS ARE ENTITLED TO QUALIFIED
IMMUNITY FOR THE WARRANTLESS ENTRY INTO
THE HOME. . . . . . . . . . . . . . . . . . 19

A.   Introduction. . . . . . . . . . . . . 19

B.   No Constitutional Right Was Violated By
Officer Peterson, And Later, Officer
Holden's Entry To The Home. . . . . . 21

C.   The Law Was Not Clearly Established that
Officer Peterson Was Prohibited From
Pursuing Plaintiff Into His Home. . . . 25

D.   Plaintiff's First Cause Of Action:
Unlawful Entry, Seizure And Arrest
Under 42 U.S.C. § 1983 Should Be
Dismissed. . . . . . . . . . . . . . 27

IV. EXCESSIVE FORCE CLAIMS SHOULD BE DISMISSED. . 28

A.   Introduction. . . . . . . . . . . . . 28

B.   Ninth Circuit Cases. . . . . . . . . . 29

C.   Other Cases. . . . . . . . . . . . . 30

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

-ii-

Case 3:05-cv-00002-TMB    Document 81    Filed 05/23/2008    Page 4 of 43

    D.   No Constitutional Violation Occurred By
         The Officers' Use Of The Pepper Spray.  . 31

    E.   The Law Was Not Clearly Established That
         Pepper Spray Could Not Be Used Under The
         Totality Of The Circumstances.  . . . . . 33

 V. MEDICAL CARE WAS NOT DENIED IN VIOLATION OF
    42 U.S.C. § 1983.  . . . . . . . . . . . . . . 33

VI. STATE CLAIMS SHOULD BE DISMISSED.  . . . . . . 34

VII. CONCLUSION.  . . . . . . . . . . . . . . . . . 34

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

-iii-

LIST OF EXHIBITS

Exhibits

A      Transcript[1] of the deposition of Douglas
Croyle taken on April 9, 2008

B      Douglas Croyle's handwritten notes

C      Transcript of recorded call made to dispatch
by Laurie Skonberg

D      Excerpts of Transcript of Grand Jury
Proceedings of testimony of Laura Skonberg
on March 23, 2003

E      Excerpts of Transcript of Grand Jury
Proceedings of testimony of Laura Skonberg
on June 5, 2003

F      Register of Incidents/Offenses

G      Citizen Report DWI - REDDI dated January 4,
2003

H      Kodiak Police Department dispatch log dated
January 4, 2003

I      Transcript of the deposition of Frank
Peterson taken on April 1, 2008

J      Transcript of the deposition of Jeffrey H.
Holden taken on April 2, 2008

K      Excerpts of Transcript of Grand Jury
Proceedings of testimony of Maudean Magnuson
on June 5, 2003

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

---

[1]Citations to transcripts (of recordings, depositions, or
proceedings) cited throughout this memorandum will be to the
Exhibit and then the actual transcript page.

L       Kodiak Police Department Narrative Report,
        Case No. 200300101

M       Police car video cam videotape[2]

N       Frank Peterson scene audiotape

O       Transcript of police tape, Officer Peterson

P       Holding room videotape

Q       Transcript of processing tape of Scott
        Brown, January 4, 2003

R       Transcript of DMV Administrative Hearing -
        Scott Brown testimony on February 14, 2003

S       Transcript of the deposition of Scott Brown
        taken on January 16, 2007

T       Misdemeanor Complaint dated January 6, 2003
        and Affidavit by Police Officer in Support
        of Complaint dated January 4, 2003 in State
        of Alaska v. Brown, 3KO-03-12 Cr.

U       Motion to Suppress Evidence dated March 18,
        2003

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

---

    [2]Defendants will file a motion to permit the
submission of exhibits M, N, and P.  Therefore, these
exhibits are not attached hereto.  These exhibits will
be provided to the Court and Plaintiff once a ruling
is made.

V       Opposition to Suppress Evidence dated
March 20, 2003

W      Reply to Opposition to Motion to Suppress
Evidence dated March 21, 2003

X       Order dated April 1, 2003

Y       Transcript of Proceedings regarding
Evidentiary Hearing on Motion to Suppress
dated April 3, 2003

Z       Transcript of Evidentiary Hearing on Motion
to Suppress

AA    DMV Notice and Order of Revocation dated
January 4, 2003

AB    Order to Suppress Evidence dated April 3,
2003

AC    Motion for Reconsideration dated April 7,
2003

AD    Order dated April 9, 2003

AE    Indictment dated March 27, 2003

AF    Information Adding Misdemeanor Count to
Indictment dated April 3, 2003

AG    Corrected Information Amending and
Supplanting Count III only dated April 25,
2003

AH    Order Dismissing Indictment dated May 14,
2003

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

AI       Order Suppressing Evidence Relative to Count
         II dated May 14, 2003

AJ       Superceding Indictment dated June 5, 2003

AK       Order dated August 11, 2003

AL       Order dated August 7, 2003

AM       Indictment dated June 19, 2003 in State v.
         Brown, 3KO-S03-373 Cr.

AN       Order Dismissing Indictment dated
         October 24, 2003 in State v. Brown, 3KO-03-
         373 Cr.

AO       Decision Regarding Order Dismissing
         Indictment dated November 5, 2003 in State
         v. Brown, 3KO-03-373 Cr.

AP       Log notes regarding evidentiary hearing
         dated June 11, 2003

AQ       Verdict dated December 11, 2003

AR       Transcript of deposition of Tammy Hulsey
         taken on April 2, 2008

AS       Transcript of deposition of James L. Ellar
         taken on April 7, 2008

AT       Transcript of deposition of Edward O. Mott
         taken on April 8, 2008

AU       Harveston v. Cunningham, 216 Fed.Appx. 682,
         WL 34424 (C.A.9 (Wash.))

AV       Transcript of deposition of Cary Bradbury
         taken on April 2, 2008 - *WITHDRAWN*

FRANK S. KOZIOL
ATTORNEY AT LAW
818 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

-vii-

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

INTRODUCTION

Defendants Frank Peterson (Peterson) and Jeffrey
Holden (Holden), police officers with the City of Kodiak, hereby
move for summary judgment on all claims asserted against them.
Claims against the City of Kodiak will be discussed in the
City's separate Motion for Summary Judgment.

STATEMENT OF THE CASE

I.    EVENT FACTS.

On January 4, 2003 at 4:51 p.m., a Kodiak Police
Department dispatcher, Douglas Croyle (Croyle), received a
telephone call from Laurie Skonberg (Skonberg).[3]

The transcript of the telephone call shows that
Skonberg reported a gold flat bed truck that (1) slid through
the Safeway parking lot, throwing rocks on a lady in the parking
lot, and (2) when Skonberg followed the vehicle, she saw it
traveling 45-50 mph, "going sideways and fishtailing", "out of
control and very reckless", and did a 360 degree turn in front
of her.  She also told the dispatcher "They appear to be drunk."
Finally, Skonberg told the dispatcher that the vehicle was going
up Pillar Mountain and she would be surprised if the vehicle
made it back down.[4]

---

[3]Exhibit A at Tr. 10-11, 42-43 and Exhibit B,
Croyle's handwritten notes at 11120.

[4]Exhibit C at Tr. 2-4.  Skonberg testified at a
grand jury proceeding that the vehicle ran a stop
sign.  Exhibit D at Tr. 2, Tr. 14.  However, this was
not mentioned in the call to dispatch.  Skonberg

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary
Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 1 of 35

At 4:53 p.m., Croyle spoke to Kodiak Police Officer Peterson at the police station. Croyle told Peterson he received a REDDI (Report Every Drunk Driver Immediately) report and that the vehicle, a gold flat bed truck was being driven recklessly. Peterson was told the vehicle was headed up Pillar Mountain Road.[5] Contemporaneously with telling Peterson of the REDDI report, Croyle entered the call as a REDDI on the register of incidents/offenses.[6] Immediately thereafter, Croyle began typing the complaint card wherein he entered the caller's information as a "Citizen Report DWI-REDDI."[7] Further confirming that Croyle viewed the call as a REDDI, Croyle dispatched a State of Alaska Trooper to the scene telling the Trooper that two Kodiak police officers had been dispatched on a REDDI, as reflected in Croyle's radio logs.[8]

Prior to leaving the police station, Peterson told fellow Police Officer Holden of the REDDI call as received from

_____

further testified that the vehicle, when it went through the stop sign, was going over 40 mph and that it did an uncontrolled 360 degree turn two car lengths behind her after it had passed her in the opposite direction. She was concerned that the vehicle may have injured herself and her children. Exhibit E at Tr. 9-10.

[5]Exhibit A at Tr. 42-46, 98-99.

[6]Exhibit A at Tr. 53-54 and Exhibit F.

[7]Exhibit A at Tr. 101 and Exhibit G.

[8]Exhibit A at Tr. 110-111 and Exhibit H at 10464.

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment.
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 2 of 35

Croyle.[9]  Holden left the station three minutes after Peterson departed, believing he was looking for a drunk driver.[10]  The officers divided up the areas where the gold flat bed truck may be located, with Peterson proceeding up Pillar Mountain Road and Holden searching at the base of the mountain.[11]

At 4:59 p.m., six minutes after he was dispatched from the station, Peterson saw the gold flat bed truck coming down Pillar Mountain Road and he reported to Croyle the license plate number.[12]

One minute later, Croyle described another call he received about the truck to Peterson.[13]  The woman who was sprayed with rocks called dispatch.  She reported that it was a gold flat bed truck with duals on the back that sprayed her in the Safeway parking lot.  The occupants of the vehicle motioned her to go in front of them but as she began to do so the vehicle was floored and went past her, covering her with rocks and also covering the front of the Safeway store.  She described the driver as having bushy blondish hair and the passenger as having

---

[9]Exhibit I at Tr. 119.

[10]Exhibit A at Tr. 102, Exhibit H at 10463, and Exhibit J  at Tr. 19-20.

[11]Exhibit I at Tr. 119, 193-194 and Exhibit J at Tr. 19-20.

[12]Exhibit A at Tr. 103 and Exhibit H at 10463.

[13]Exhibit A at Tr. 104-105 and H at 10463-10464.

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 3 of 35

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

black hair and very dark stubble.[14]

      Peterson turned his vehicle around, illuminated his overhead lights, and followed the vehicle.  The vehicle pulled into a driveway and the driver (Plaintiff Brown) jumped from the vehicle.  Peterson yelled several times for the man to stop but the man ran into the residence.  Peterson was directly behind the man when he closed the outside door.  Peterson then entered the residence and followed the man to a bathroom.  At the bathroom, Peterson tried to open the door but the man was holding the door closed.[15]

      A police video cam tape shows Peterson turning his vehicle around after the gold flat bed truck passed him.  The tape shows Peterson following the truck to a residence.  The tape shows someone exiting the driver's door.  The passenger is then shown removing a case of beer from the vehicle.[16]

      The man would not exit the bathroom despite the pleadings of his wife and Peterson.  Finally, the man exited the bathroom and inquired why he was pulled over since he did nothing wrong.  Peterson noticed the man had difficulty walking, swayed when he stood, had the odor of alcohol on his breath, had

---

[14]Exhibit C at Tr. 2-3.  This woman, Maudean Magnuson, testified if she had taken another step and turned in front of the vehicle, she would have been "flattened." Exhibit K at Tr. 6.

[15]Exhibit I at Tr. 207-208 and Exhibit L at 1.

[16]Exhibit M (to be submitted once the Court rules on the Motion to Permit Submission).

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707
Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 4 of 35

eyes that were bloodshot and watery, and his speech was slurred.[17]

The conversation continued as to whether he was intoxicated.  The man stated that he drank after he came into the house.  The man then grabbed a beer bottle near the refrigerator.  Peterson told him not to drink it or he would be pepper sprayed.  The man drank the beer and was pepper sprayed.[18] Even after he was pepper sprayed, the man continued to drink from the bottle.  About half of a 16 ounce long necked Bud Lite was consumed.[19]

Peterson then grabbed the beer bottle from the man. Damon Brown, Plaintiff's brother, (the passenger from the vehicle) then entered the house.  Peterson told him to leave the area.  Peterson then returned to try to place handcuffs on the man but he resisted.  A struggle ensued and Holden arrived to help place the handcuffs.  Holden again pepper sprayed the man because of his resistance to being handcuffed.[20]

Peterson's scene tape captured these events.[21]   The man refused Peterson's request to come out of the bathroom.  His

---

[17]Exhibit L at 1-2.

[18]Exhibit L at 2.

[19]Exhibit I at Tr. 211-212.

[20]Exhibit L at 2.

[21]Exhibit N, audio scene recording, (to be submitted once the Court rules on the Motion to Permit Submission).

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
*Brown v. Peterson, et al.*, Case No. 3:05-cv-0002 [TMB]
Page 5 of 35

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

wife pleaded with him to come out telling him she was scared but he still refused.[22]  The man claimed he was not driving recklessly and asserted he was not even driving.[23]  When the man emerged from the bathroom he was told to sit down but refused.[24]  When confronted by Peterson that he was swaying while standing and when asked how much had he to drink, the man at first denied any drinking then said he was drinking in the bathroom.[25]  The tape confirms that the man picked up a bottle of beer, was told to put it down, and refused, was told he would be pepper sprayed if he did not put it down and replied "Go ahead".  The wife told the man "Scott, don't.  Don't.  Please don't", referring to drinking the beer.  The man then drank the beer, was told he was under arrest and was pepper sprayed.[26]

Holden responded to the scene.  He saw the man and Peterson in the kitchen.  Peterson had the man by an arm but a struggle was occurring as Peterson was trying to handcuff the man.  The man broke free from Peterson.  Holden grabbed the man's arm but the man jerked his arm from Holden.  Holden then pepper sprayed the man for 1-2 seconds, the man stopped

---

[22]Exhibit O, transcript of audio scene recording at Tr. 2-3.

[23]Exhibit O at Tr. 5.

[24]Exhibit O at Tr. 6.

[25]Exhibit O at Tr. 6-9.

[26]Exhibit O at Tr. 9.

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
*Brown v. Peterson, et al.*, Case No. 3:05-cv-0002 [TMB]
Page 6 of 35

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

resisting, and handcuffs were placed on him.[27]

       Peterson identified the man as Plaintiff Scott Brown at the police station.[28]  At approximately 6:50 p.m., Plaintiff Brown provided a breath sample which registered a Breath Alcohol concentration of .185.[29]  Peterson's difficulty in having Brown blow into the Datamaster was video-recorded.[30]  An obviously drunk Brown was belligerent, threatening, obnoxious, and insulting through most of the tape recording.[31]

       Plaintiff Brown had an explanation for all the evidence against him.  He blamed the spraying gravel and the fishtailing on a sticking throttle.[32]  He denied drinking any alcohol prior to entering the bathroom.[33]  He denied knowing the police officer was following him until he was in the bathroom.[34]  He went into the house, not because the police were chasing him

---

[27]Exhibit J at Tr. 25-26, 57-60.

[28]Exhibit L at 3.

[29]Exhibit L at 5-6.

[30]Exhibit P, videotape recording of the holding room (to be submitted once the Court rules on the Motion to Permit Submission).

[31]Exhibit Q, transcript of videotape recording of the holding room.

[32]Exhibit R at Tr. 2-4.

[33]Exhibit R at Tr. 7.

[34]Exhibit R at Tr. 6.

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 7 of 35

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

but because he had to urinate and defecate.[35]  He denied running
into the house and termed Peterson a "liar" for so stating.[36]
While in the bathroom, he drank 3/4ths of a fifth of Jack
Daniels which he had kept hidden because his wife did not like
him to drink.[37]  He drank the Jack Daniels because he was
stressed out due to having previously sprained his ankle and was
in pain, and he had an argument with his brother and wanted
"stress relief."[38]  He drank the beer after the Jack Daniels
despite the Officer's warning about being pepper sprayed because
he needed something to chase down the Jack Daniels which was
causing him to burp.[39]

> II.   UNDERLYING LEGAL PROCEEDINGS.

The underlying state legal proceedings are relevant to
any claimed collateral estoppel argument that Plaintiff Brown
may assert and as background information for the court.
However, due to the page restrictions ordered by this Court,
Defendants will not set forth those proceedings in this brief.
The course of those proceedings can be found at Exhibits T
through AQ.

---

[35]Exhibit S at Tr. 56-57.

[36]Exhibit S at Tr. 135.  However, a neighbor, Tammy
Hulsey, saw Plaintiff running into the house.  Exhibit AR at
Tr. 34-35.

[37]Exhibit R at Tr. 6-8.

[38]Exhibit R at Tr. 6-7.

[39]Exhibit R at Tr. 9.

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary
Judgment
*Brown v. Peterson, et al.*, Case No. 3:05-cv-0002 [TMB]
Page 8 of 35

SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law.  The moving party has the burden of showing that there is no genuine dispute as to material fact.[40]

ARGUMENTS

I.    NO COLLATERAL ESTOPPEL AGAINST
      DEFENDANTS FOR ANY DECISION BY
      THE STATE COURT.

Defendants do not believe that Plaintiff Brown is entitled to collateral estoppel for any decision by the state court.  In light of the court's page restriction on this brief, Defendants will not submit any briefing on this issue.  If Plaintiff Brown asserts entitlement to collateral estoppel, Defendants will respond in a reply brief.

II.   NO FOURTH AMENDMENT VIOLATION OCCURRED
      WITH THE ENTRY INTO THE HOME.

A.    Introduction.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  Police may arrest without a warrant for misdemeanors committed in their presence but not outside their presence.[41]  However, police are

---

[40]<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

[41]AS 12.25.030(a)(1), (2).

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 9 of 35

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

authorized in Alaska to arrest for Driving While Intoxicated based upon probable cause even if committed outside their presence.[42]

Nevertheless, when an entry is made in a home additional protections are afforded. Under the Fourth Amendment, such searches and seizures without a warrant are presumptively unreasonable.[43] However, this presumption can be overcome by a showing of one of the well-delineated exceptions to the warrant requirement.[44]

Two of the exceptions are hot pursuit of a fleeing criminal and imminent destruction of evidence.[45]

B.    Hot Pursuit.

In Welsh v. Wisconsin,[46] the Supreme Court held that the need to ascertain a suspect's blood alcohol level did not justify a warrantless entry into a residence to effect an arrest for driving under the influence in Wisconsin. The Court invalidated the arrest because "an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made."[47] At the time, Wisconsin classified a first offense for DUI as a

---

[42]AS 12.25.033.

[43]Payton v. New York, 445 U.S. 146, 152 (1980).

[44]Katz v. United States, 389 U.S. 347, 357 (1967).

[45]Minnesota v. Olson, 495 U.S. 91, 100 (1990).

[46]466 U.S. 740, 753-754 (1984).

[47]Id. at 753.

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 10 of 35

noncriminal, civil forfeiture offense for which no imprisonment was possible.[48]

Most courts have limited <u>Welsh's</u> holding to non-jailable offenses and have rejected any extension to misdemeanors where imprisonment is possible.[49]

The California Supreme Court has allowed the hot pursuit of DUI suspects into their homes without a warrant.  Most jurisdiction are in accord since DUI is now considered a serious offense.[50]

    C. Imminent Destruction Of Evidence.

The question presented is whether the metabolization of alcohol qualifies as imminent destruction of evidence justifying a warrantless entry into a home.

Most courts have held that the dissipation of blood-alcohol evidence can constitute an exigent circumstance justifying a warrantless entry to the home.[51]  A defendant's blood alcohol level will diminish while the police obtain a warrant and the defendant may corrupt the evidence during the interim by ingesting more alcohol.  These reasons have persuaded most courts

---

[48]<u>Id.</u> at 754.

[49]<u>People v. Thompson</u>, 135 P.3d 3, 10-11 (Cal. 2006) (listing cases).

[50]<u>Id.</u> (listing jurisdictions that permit hot pursuit of DUI suspects).

[51]<u>People v. Thompson</u>, 135 P.3d at 11-12 (listing cases).  <u>Accord</u>: <u>State v. Robinson</u>, 163 P.3d 1208, 1213 (Idaho App. 2007).

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
<i>Brown v. Peterson, et al.</i>, Case No. 3:05-cv-0002 [TMB]
Page 11 of 35

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

to permit warrantless entries to homes to arrest DUI defendants.[52]

>          D.    Peterson Had Reasonable Suspicion
>                To Believe That Plaintiff Brown Had
>                Committed A DUI And, Therefore, Was
>                Lawfully Making An Investigatory
>                Stop When Plaintiff Brown Fled.

A predicate for any entry into a home based upon hot pursuit or imminent destruction of evidence is reasonable suspicion and/or probable cause.

"Probable cause" is a reasonable belief from the facts and circumstances that an offense has occurred and that the suspect has committed it.[53]  "Reasonable suspicion" requires lesser proof.  It has been described as "a particularized and objective basis" for suspecting the person stopped of criminal activity.[54]

Peterson had a reasonable suspicion that the driver was intoxicated.[55]  Peterson was told that a citizen had reported

---

[52]People v. Thompson, 135 P.3d at 11-13.

[53]See, Brinegar v. United States, 338 U.S. 160, 175-176 (1949).

[54]Ornelas v. United States, 517 U.S. 690, 695-696 (1996).

[55]This was also Peterson's subjective belief. Exhibit I at Tr. 196.  Plaintiff's expert, James Ellar, agrees that Peterson had reasonable suspicion to believe that the driver was intoxicated.  Exhibit AS at Tr. 26.  Plaintiff's other expert, Edward Mott also agrees that Peterson had reasonable suspicion to believe that the driver was intoxicated.  Exhibit AT at Tr. 52-53.  However, Mr. Mott changed his mind when

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 12 of 35

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

the vehicle as a REDDI and that it had been driven recklessly. He was told the vehicle, a gold flat bed truck, was going up Pillar Mountain Road.  Six minutes after being dispatched Peterson saw such a vehicle coming down Pillar Mountain Road. That Peterson received the dispatch as a REDDI is supported not only by his own testimony but that of two other witnesses. Therefore, Peterson could make an investigatory stop of the vehicle.

An investigatory stop requires specific and articulable facts which create "a reasonable suspicion that imminent public danger exists."[56]  The danger created by an intoxicated driver satisfies this test.[57]

An officer may rely upon information which he received from a dispatcher in formulating reasonable suspicion.[58]  A two part test has been employed to determine the reliability of the informant and the information provided to the dispatcher: (1) the underlying circumstances showing reason to believe that the informant is a credible person, and (2) the underlying circumstances showing the basis of the conclusions reached by

_____

questioned by Plaintiff's attorney.  Exhibit AT at Tr. 103-104.

[56]Effenbeck v. State, 700 P.2d 811, 812 (Alaska App. 1985) (citation omitted).

[57]Id.

[58]Id.

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 13 of 35

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

the informant.[59]

Peterson could reasonably rely upon two citizen informants as credible persons. Furthermore, the citizen informants appeared to have personal knowledge of the reckless driving. While the statement of one of the informants that the driver was intoxicated is conclusory, it is a fact that lay witnesses have always been permitted to so testify in court and can be relied upon by the officer.[60]

The Alaska Supreme Court has approved the reliance by police officers on REDDI reports so long as there are "some indicia of reliability."[61] Reasonable suspicion may be based on a telephoned report that the driver may be driving while intoxicated.[62]

Even if Peterson was only told he was being sent out on a reckless driving and not a REDDI, so long as the dispatcher received the report of an intoxicated driver, reasonable

---

[59]Effenbeck, 700 P.2d at 812-813 (citing Aguilar v. Texas, 387 U.S. 108 (1964)).

[60]Id. at 813.

[61]Saltz v. State, Department of Administration, Division of Motor Vehicles, 126 P.3d 133, 136-138 (Alaska 2005).

[62]Goodlataw v. State, 847 P.2d 589 (Alaska App. 1993); See also, Walton v. State, 700 P.2d 810 (Alaska App. 1985), where the court upheld an investigative stop based solely on a REDDI report that the defendant driver had been "all over the road" and "ran people off the road."

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 14 of 35

suspicion is established to support an investigatory stop for DUI.  The dispatcher's knowledge is attributable to Peterson.[63]

> E.    Peterson Could Lawfully Enter
>       Plaintiff's Residence Without
>       A Warrant Based Upon Investigatory
>       Stop Authority While In Hot Pursuit.

A respected legal authority has approved a negative answer to the question as to whether a police officer who confronts a citizen on a public street, without probable cause but with grounds to stop, is barred from pursuing that suspect into private premises when the person seeks sanctuary in response to the officer's response to stop.[64]  A federal appeals court reasoned as follows:

> We are of the opinion that the Supreme
> Court's recent decision in United States v.
> Santana, 427 U.S. 38 (1976) requires a
> negative answer to this question. . . . We
> read the gravamen of the Court's holding in
> Santana to be that when a citizen has
> knowingly placed himself in a public place
> and valid police action is commenced in that
> public place, the citizen cannot thwart that
> police action by then fleeing into a private
> place.  In the instant case, appellant and
> his companion were in a public place when

------

[63]State v. Prater, 958 P.2d 1110, 1113 (Alaska App. 1998).

[64]LaFave, Search and Seizure: A Treatise On The Fourth Amendment at § 9.2 at 12-13 (4th ed. 2007) (treatise author believes that a suspect who moves from a public to a private space has only himself to blame for a subsequent entry and would permit hot pursuit based upon an investigatory stop).

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 15 of 35

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

> Detective Jackson sought to effect a valid
> Terry stop and appellant then tried to
> thwart that stop by running into the
> building adjacent to the street and gaining
> his apartment before the pursuing policeman-
> six or seven strides behind- could catch
> him.  Given these particular circumstances,
> we conclude the officers here should not
> have been forced to simply "shrug (their)
> shoulders and allow a crime to occur or a
> criminal to escape."[65]

Other courts have ruled similarly.[66]  There is some contrary authority.[67]

The Nebraska Supreme Court has permitted a warrantless entry into a home based upon reasonable suspicion of a DUI when done in hot pursuit.[68]

Therefore, Peterson could lawfully enter Plaintiff's residence without a warrant based upon reasonable suspicion.

---

[65]Edwards v. United States, 364 A.2d 1209, 1214 (D.C. App. 1976) (later, upon an en banc rehearing, police action upheld on the ground that there had been probable cause to arrest, 379 A.2d 976 (D.C. App. 1977)).

[66]United States v. Pace, 898 F.2d 1218, 1228-1229 (7th Cir. 1990), cert. denied, 497 U.S. 1030 (1990); United States v. Gomez, 633 F.2d 999, 1006 (2d Cir. 1980), cert. denied, 450 U.S. 994 (1981); People v. Rivera, 598 N.E.2d 423, 427 (Ill. App. 1992); Commonwealth v. Daniels, 421 A.2d 721, 724-725 (Pa. Super. 1980).

[67]State v. Beavers, 859 P.2d 9, 17 (Utah Ct. App. 1993).

[68]State v. Penas, 263 N.W.2d 835, 837-838 (Neb. 1978) (DUI).

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 16 of 35

F.    Peterson Could Lawfully Enter
Plaintiff's Residence Without
A Warrant Based Upon Probable
Cause To Arrest Plaintiff For
Driving Under The Influence.

In Alaska, a police officer may arrest a person
without a warrant for DUI if supported by probable cause and the
violation is alleged to have occurred within eight hours of the
arrest.[69]  The constitutionality of the statute authorizing such
warrantless arrests was upheld on the basis of exigent
circumstances.  The legislature could reasonably conclude that
the risk of loss of evidence in a drunk driving case constitutes
exigent circumstances.[70]

The report to Peterson of drunk driving occurred well
within the eight hour time frame when Plaintiff Brown was
arrested.

Peterson had probable cause to arrest Plaintiff Brown
for DWI.[71]  An officer has probable cause for an arrest when the
officer is "aware of facts and circumstances, based on

_____

[69]AS 12.25.033.

[70]Proctor v. State, 643 P.2d 5, 7 (Alaska App.
1982).

[71]Peterson subjectively believed he had probable
cause to arrest Plaintiff for DUI.  Exhibit I at Tr.
198.  If Plaintiff had stopped and not gone in the
house, Peterson, though he believed he had probable
cause to arrest, would not likely have done so.
Rather, he would have had Plaintiff perform field
sobriety tests and administered a portable breath
test.  Exhibit I at Tr. 267-268.

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary
Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 17 of 35

reasonably trustworthy information, that are sufficient in themselves to warrant a reasonable belief that an offense has been or is being committed."[72]  One court found that reasonable (probable) cause to believe that the defendant was under the influence of either drugs or liquor was established based upon erratic driving and the defendant fleeing from the officer into his home.[73]  This would be the same basis as Peterson had to establish probable cause to believe that Plaintiff Brown had committed DUI.  Peterson had the additional basis of the REDDI report to support the probable cause belief.[74]

───────────────

[72]Saucier v. State, 869 P.2d 483, 484 (Alaska App. 1994).

[73]State v. Penas, 263 N.W.2d 835, 837-838 (Neb. 1978); other cases are in accord: City of Kirksville v. Guffey, 740 S.W.2d 227, 229 (Mo. App. 1987), cert. denied, 485 U.S. 1035 (1988) (probable cause to arrest for DUI based upon erratic driving).  See, State v. Nikola, 821 A.2d 110, 115 (N.J. Super. 2003), cert. denied, 834 A.2d 404 (2003) (report of reckless driving by citizen constituted "substantial evidence that someone had been driving defendant's car while in an impaired condition" prior to officer's entry into the home); see also, Stark v. New York State Department of Motor Vehicles, 104 A.D.2d 194, 195 (N.Y. App. 1984), aff'd in 481 N.E.2d 548 (1985) (police officer observed erratic driving and the driver "staggering" from the vehicle to his house constituted probable cause to believe DUI had been committed).

[74]Plaintiff's expert, James Ellar, also believed that Peterson could have lawfully arrested Plaintiff for DUI before Plaintiff's entry to the house. Exhibit AS at Tr. 26-27, though this testimony was

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 18 of 35

Peterson could reasonably believe that evidence would be destroyed (the metabolization of the DUI suspect's blood alcohol) or that the evidence would be contaminated by subsequent drinking if entry was not made into the home. This imminent destruction of evidence justifies the entry into the home without a warrant to make the arrest.

### III. THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY FOR THE WARRANTLESS ENTRY INTO THE HOME.

#### A.    Introduction.

Peterson and Holden have each been sued in their personal capacity, in addition to their official capacity.[75]

Qualified immunity protects government officials, acting in their personal capacity, performing discretionary functions, from liability for civil damages, unless the official's conduct violates clearly established federal law which a reasonable person would have known.  Harlow v. Fitzgerald.[76] The United States Supreme Court has emphasized that because qualified immunity is an immunity from suit and not just from liability, it should be resolved at the "earliest possible stage in litigation."  Hunter v. Bryant.[77]

---

changed during questioning by Plaintiff's counsel (at Tr. 65-66).

[75]See, Complaint dated January 3, 2005, caption and paragraphs 2 and 3.

[76]457 U.S. 800, 818 (1982).

[77]112 S. Ct. 534, 536 (1991).

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 19 of 35

In <u>Anderson v. Creighton</u>,[78] the United States Supreme Court held that constitutional challenges to warrantless searches by law enforcement officers are subject to the defense of qualified immunity.  This means that a warrantless search could be unreasonable and, thus, unconstitutional for Fourth Amendment purposes but objectively reasonable for the purpose of qualified immunity.

A law is "clearly established" when "the contours of the right . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."[79]  This objective reasonableness standard "is intended to provide government officials with the ability 'reasonably [to] anticipate when their conduct may give rise to liability for damages'".[80]  The Ninth Circuit has stated that although police officers are responsible for keeping abreast of constitutional developments, they are not expected to do so to the same extent as law professors.[81]

In <u>Saucier v. Katz</u>, the Supreme Court determined a two-step analysis for qualified immunity claims.[82]  First, a court must determine whether the alleged facts, in the light most

---

[78]483 U.S. 635, 640-641 (1987).

[79]<u>Id.</u>

[80]<u>Id.</u> at 647.

[81]<u>Ward v. San Diego County</u>, 791 F.2d 1329, 1332 (9th Cir. 1986), <u>cert. denied</u>, 483 U.S. 1020 (1987).

[82]533 U.S. 194, 201 (2001).

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
*Brown v. Peterson, et al.*, Case No. 3:05-cv-0002 [TMB]
Page 20 of 35

favorable to the nonmoving party, show that the officer's conduct violated a constitutional right.  If the court determines no constitutional right was violated, the inquiry ends and the officer is entitled to qualified immunity.  However, if a violation occurred, the court must then determine whether the rights were "clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted".[83]

As to the second prong, the Ninth Circuit has stated that a properly particularized question, not a general question marginally related to the facts, must be posed.[84]

The properly posed question in this case is as follows: Whether, at the time of the entry into the home it was clearly established that police officers could not, in hot pursuit, enter a home without a warrant, based upon reasonable suspicion/and or probable cause to believe the fleeing person had committed DWI?

> B.   No Constitutional Right Was Violated By
> Officer Peterson, And Later, Officer Holden's
> Entry To The Home.

The legal basis for Peterson's attempt to stop Brown from entering his home was, at a minimum, reasonable suspicion to believe Brown had committed DUI.  Peterson had received a REDDI report coupled with a reckless driving description by of a gold flat bed truck.  The truck was seen 6

_____

[83]Menotti v. City of Seattle, 409 F.3d 1113, 1152 (9th Cir. 2005) (quoting Saucier, 533 U.S. at 210-02).

[84]See, Camarillo v. McCarthy, 998 F.2d 638, 640 (9th Cir. 1993).

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 21 of 35

minutes later in the area described by the citizen complainant.

It is believed that Brown will assert that Peterson was not actually told it was a REDDI dispatch because he did not record such fact in his police report or affidavit.[85]  However, for purposes of establishing reasonable suspicion, so long as the dispatcher received the report, which indisputably occurred, such dispatcher knowledge is attributable to Peterson.

Given the short time frame between the REDDI report and Peterson's sighting of the described gold flat bed truck, Defendants believe hot pursuit occurred and that the reasonable suspicion existed that the driver of the truck committed DUI.

Brown may contend this was not "hot pursuit" because he was unaware that he was being pursued, as he testified in his deposition.[86]  This testimony is of questionable validity because (1) the video cam shows the gold flat bed truck pulling into the driveway and the driver's door opening and closing while the police lights were illuminated and (2) Brown admitted, as shown

---

[85]This may be an awkward argument for Plaintiff to make since his expert, James Ellar, testified that Peterson was likely told of the REDDI report but simply forgot to put this fact in his police report. Exhibit AS at Tr. 41.

[86]Exhibit S at Tr. 56-57.  Mr. Ellar also believes that Plaintiff is lying when he denies drinking and driving immediately before running into the house. Exhibit AS at Tr. 45, but see at Tr. 72, where he "guesses" he was not drinking.  This guess was recanted at Tr. 102 wherein he restates his belief that Plaintiff lied on this point.  If Plaintiff was drinking and driving it is more likely that he would have run from the police as a result.

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 22 of 35

on the processing room videotape, that he saw Peterson outside the home.[87]  Given these facts, it is difficult to believe that Brown did not hear Peterson tell him to stop before he entered the home.  Indeed, Plaintiff's expert, James Ellar, testified that Plaintiff likely ran into the house because he knew the police were chasing him for DWI.[88]  In any event, an objective test should be employed, and given the short time frame, a hot pursuit occurred.

The question, thus, becomes, can an officer lawfully pursue a fleeing DUI suspect into his home to conduct an investigatory stop based upon reasonable suspicion?

Defendants have found no Ninth Circuit case on point. However, the Second Circuit, Seventh Circuit, and D.C. Circuit have all approved hot pursuit entries based upon reasonable suspicion, though not specifically for DUI.[89]  One state court has permitted such hot pursuit on a DUI.[90]

Though there is some contrary authority, the better reasoned conclusion is that such hot pursuit should be permitted, at least for serious crimes where exigent circumstances exist. As one court has stated "The enforcement of our criminal laws, including serious traffic violations, is not a game where law enforcement officers are 'it' and one is 'safe' if one reaches

_____

[87]"You were still coming up the street. I saw where you was." Exhibit Q at Tr. 61-62.

[88]Exhibit AS at Tr. 46-50.

[89]See, nn.114 & 115.

[90]See, n.117.

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
*Brown v. Peterson, et al.*, Case No. 3:05-cv-0002 [TMB]
Page 23 of 35

'home' before being tagged."[91]  If such evasions were permitted, every attempt by the police to stop a vehicle could potentially result in a race to the driver's home.

There can be no doubt that DWI is a serious crime and that exigent circumstances existed in the present case.  Not only was Brown's blood alcohol level metabolizing with the passage of time but allowing him to remain in the home while a warrant was obtained would have provided him with further opportunity to contaminate the evidence by continuing to drink, something he did anyway despite the best efforts of Peterson.

Furthermore, Peterson's intrusion was minimal.  He did not break down either the front door nor bathroom door.  Peterson waited until Brown could be persuaded to leave the bathroom, though with hindsight, breaking down the door would have eliminated any defense by Brown of contamination.

Defendants believe that probable cause existed to arrest Brown for DUI before Peterson entered the house.  Several courts have held that erratic driving combined with fleeing is enough to infer intoxication.[92]  Assuming probable cause to arrest for DUI, most courts permit hot pursuit into a home to make an arrest.[93]

In sum, no constitutional right was violated by Peterson's entry into the home.

_____

[91]Gasset v. State, 490 So.2d 97, 98-99 (Fla. Dist. Ct. App. 1986), rev. denied, 500 So.2d 544 (1986).

[92]See, n.122.

[93]See, nn.98 & 99.

FRANK S. KOZIOL
ATTORNEY AT LAW
818 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 24 of 35

C.    The Law Was Not Clearly Established that Officer Peterson Was Prohibited From Pursuing Plaintiff Into His Home.

Peterson reasonably believed he was pursuing an intoxicated driver who had been driving recklessly a few minutes before he saw the subject vehicle.  Peterson also reasonably believed that the driver was fleeing from him given the driver's failure to stop outside the vehicle when the police overhead lights were on and Peterson told Plaintiff to stop.

Exigent circumstances existed since evidence of intoxication would dissipate and could be contaminated while a warrant was obtained.  The crime was serious and a wrongdoer would escape punishment if the evidence was compromised.

Peterson did not know the basis for the REDDI report other than reckless driving was involved.  The dispatcher did not obtain nor inquire of the caller why she thought the driver may be intoxicated.  Peterson had to make a split second decision to follow or not follow Plaintiff into the house.  He did not have time to determine the basis for Laurie Skonberg's belief that the driver was intoxicated or whether that information had been passed on to the dispatcher.  Some REDDI callers may have seen evidence of intoxication before the driver entered the vehicle later driven.

Peterson's liability should not be dependent upon the fortuity of whether the caller had inarguable probable cause to believe the driver was intoxicated.  So long as Peterson had reasonable suspicion to believe a DWI had been committed, he should not be prohibited from a hot pursuit into the house.

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 25 of 35

The law was not clearly established that Peterson did not have authority to proceed into the house based upon reasonable suspicion to make an investigatory stop for DUI. Case law and a respected legal treatise support this view.

As to whether Peterson had probable cause to arrest for DUI prior to the entry to the home, Defendants have cited authority that supports the view that erratic driving and fleeing is sufficient to establish probable cause. Probable cause does not, of course, mean sufficient evidence to obtain a conviction. Brown may cite contrary authority.[94]

The law was not clearly established that an officer receiving a REDDI report that included reckless driving could not reasonably believe he had probable cause to arrest for DUI. No legal authority required the officer to determine the basis for the caller's conclusion that the driver was drunk. Peterson could reasonably assume he had probable cause to arrest for DWI.

With such authority to arrest for DUI, and the majority of jurisdictions permitting hot pursuit into a home on such authority and the Ninth Circuit silent on the issue, at a

---

[94]Such as <u>Saucier v. State</u>, 869 P.2d 483 (Alaska App. 1994) (crossing over center line, admitting to a "couple of beers", and a "normal" odor of alcohol insufficient to establish probable cause); <u>but see</u>, <u>Seibert v. Municipality of Anchorage</u>, 2001 WL 864165 at 3 (Alaska App.) (holding that <u>Saucier</u> involved "minor driving errors" and that more serious driving errors combined with a stronger smell of alcohol coupled with walking deliberately, enough to establish probable cause). Unpublished opinions may be cited for whatever persuasive powers they possess. <u>McCoy v. State</u>, 80 P.3d 757, 764 (Alaska App. 2003).

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
*Brown v. Peterson, et al.*, Case No. 3:05-cv-0002 [TMB]
Page 26 of 35

FRANK S. KOZIOL
ATTORNEY AT LAW
619 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

minimum, the law was not clearly established that Peterson could not enter the home under these circumstances.

        For these reasons, the officers are entitled to qualified immunity.

                D.    Plaintiff's First Cause Of Action: Unlawful Entry, Seizure And Arrest Under 42 U.S.C. § 1983 Should Be Dismissed.

        The only § 1983 claim against the two officers is set forth in Plaintiff's First Cause of Action.[95]  Since the officers had a reasonable suspicion and even probable cause to detain and arrest Plaintiff by entering his house without a warrant, this claim should be dismissed.  Once Plaintiff emerged from the bathroom with undisputed signs of intoxication, probable cause was further established for the arrest.

        The officers did not believe that Plaintiff was asserting an excessive force claim given the representations by Plaintiff's attorney that use of force would not be an issue at trial and that the report of Defendant's expert would be rendered moot.[96]  However, after receipt of Plaintiff's expert reports which contain opinions of excessive force, it became apparent that Plaintiff is advancing an excessive force claim under 42 § 1983 even though not specifically pleaded.  Therefore, this excessive force claim will be addressed.

---

[95]Complaint dated January 3, 2005 at 6-7.

[96]Plaintiff's Motion to Re-Open Discovery dated August 23, 2007 at 2.

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
*Brown v. Peterson, et al.,* Case No. 3:05-cv-0002 [TMB]
Page 27 of 35

FRANK S. KOZIOL
ATTORNEY AT LAW
818 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

IV.   EXCESSIVE FORCE CLAIMS SHOULD BE DISMISSED.

A.   Introduction.

The facts are not essentially in dispute regarding the circumstances leading up to the use of pepper spray by Peterson and Holden.

At the time Peterson used the pepper spray, the following had occurred.  Plaintiff refused Peterson's repeated requests to come out of the bathroom.  His scared wife also pleaded with him, to no avail.  Finally, a drunken Plaintiff emerged from the bathroom.  Plaintiff then lied to Peterson and told him he was not driving the truck.

Plaintiff then refused two orders.  He refused to sit down and refused to put down the beer bottle.  When told he was under arrest and warned not to drink the beer or he would be pepper sprayed, Plaintiff invited Peterson to pepper spray him. Peterson did so as Plaintiff continued to drink the beer.

Peterson explained at his deposition why he used pepper spray as opposed to a hands-on technique:

> I took a lot of things into
> consideration.  One, that Mr. Brown was
> intoxicated.  He was being belligerent.  I
> was concerned about my conservation of
> evidence.  I was the only officer in the room
> at the time and there were several other
> people besides Mr. Brown.  Mr. Brown also had
> a bottle in his hand at the time which I know
> from past history from my experiences that it
> can be used as a weapon.  Injuries sustained
> by bottles can be quite serious.  Having
> taken all this into consideration, I decided
> to go with my pepper spray versus starting
> first with hands-on and then going to the

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
*Brown v. Peterson, et al.*, Case No. 3:05-cv-0002 [TMB]
Page 28 of 35

pepper spray.[97]

Plaintiff's expert, Edward Mott, testified that he has seen individuals either getting hit by bottles or having been hit by bottles on 10 occasions. Most were beer bottles. He remembers seeing "a lot of blood." The injuries ranged from gashes two to six inches in length to concussions wherein the individual was in a coma for days. He considers a beer bottle a dangerous weapon.[98]

As to Holden, a struggle was ongoing when Holden arrived. During the struggle in which Peterson was attempting to handcuff Plaintiff, Holden pepper sprayed Plaintiff to obtain compliance with the handcuffing. Compliance was obtained after this second use of pepper spray.

        B.    Ninth Circuit Cases.

The use of pepper spray to bring an arrestee under control does not violate any constitutional right. However, where the arrestee has surrendered and is rendered helpless, any reasonable police officer would know that the use of pepper spray would constitute excessive force.[99] Similarly, use of a chemical irritant on a third party who was actively interfering with

---

[97]Exhibit I at Tr. 209.

[98]Exhibit AT at Tr. 29-33.

[99]Headwaters Forest Defense v. County of Humboldt, 276 F.3d 1125, 1130 (9th Cir. 2002), cert. denied, 537 U.S. 1000 (2002) (quoting LaLonde v. County of Riverside, 204 F.3d 947, 961 (9th Cir. 2002)).

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 29 of 35

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

another's arrest does not violate any constitutional right.[100]

Using pepper spray on a handcuffed arrestee who is merely trying to roll over and stand up also is objectively unreasonable and in violation of constitutional rights. However, under such circumstances, when the arrestee continued to resist and was not completely subdued, the right was not clearly established in 2000 and the officer was entitled to qualified immunity.[101]

C.    Other Cases.

Other cases are in accord with the principle that pepper spray may be used to obtain control over an arrestee without any constitutional violation. A female motorist, stopped for going five miles per hour over the speed limit and failing to have on a seatbelt, who refused to exit the vehicle, was properly pepper sprayed to obtain her cooperation.[102] Similarly, a motorist stopped for speeding who refused to exit his vehicle after being informed he was under arrest, did not have his constitutional rights violated by being pepper sprayed. Even if the use of pepper spray was objectively unreasonable, the officer

---

[100]Jackson v. City of Bremerton, 268 F.3d 646, 651-53 (9th Cir. 2001).

[101]Harveston v. Cunningham, 216 Fed.Appx. 682, 2007 WL 34424 (9th Cir.). This case was not selected for publication. However, under FRAP 32.1 since the decision was issued after January 1, 2007, it may properly be cited. A copy of this decision is attached as Exhibit AU.

[102]Mecham v. Frazier, 500 F.3d 1200, 1204-1205 (10th Cir. 2007).

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 30 of 35

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

would be entitled to qualified immunity.[103]

There is a case factually similar to this case. A police officer reasonably believed that the plaintiff needed to go to the hospital due to a drug overdose. For 20 minutes the police officer tried to persuade the intoxicated plaintiff to go to the hospital. Plaintiff refused and continued to drink beer from a bottle. The officer warned the plaintiff he would be pepper sprayed if he continued to refuse. Plaintiff told the officer he would have to spray him and the officer did so. Under these circumstances, the court found no excessive force was used.[104]

A Fourth Amendment claim of excessive force is analyzed under the Graham v. Connor[105] test. The Graham factors are (1) the severity of the crime, (2) whether the suspect immediately threatens the safety of the police or others, and (3) whether the suspect is actively resisting or fleeing arrest.[106]

> D.   No Constitutional Violation Occurred By The Officers' Use Of The Pepper Spray.

Plaintiff's expert, James Ellar, testified that it was

---

[103]Lawyer v. City of Council Bluffs, Iowa, 240 F.Supp.2d 941, 953-954 (S.D. Iowa 2002), aff'd by 361 F.3d 1099 (8th Cir. 2004).

[104]Monday v. Oulette, 118 F.3d 1009, 1104-05 (6th Cir. 1997).

[105]490 U.S. 386 395-396 (1989).

[106]Id.

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 31 of 35

reasonable for Peterson to use the pepper spray when he did and that he (Ellar) may have done so himself.[107]  Plaintiff's other expert, Edward Mott, agreed that Peterson did not use excessive force when the pepper spray was used.[108]  Mr. Mott also testified that Holden did not use excessive force when he pepper sprayed Plaintiff because Holden would have assumed a lawful arrest was occurring and that Plaintiff was actively resisting that arrest.[109]

The case law supports the view that if an arrestee is resisting arrest or failing to cooperate, pepper spray may be used to facilitate the arrest and obtain cooperation.  Peterson and Holden's use of pepper spray under the circumstances did not constitute excessive force.

Applying the Graham factors also supports the conclusion that no excessive force was used:  (1) DWI is a serious offense that has led to serious injuries to the offender and others; (2) Plaintiff posed an immediate threat to Peterson because he picked up a dangerous weapon, the beer bottle, and refused to put it down; and (3) Plaintiff was actively resisting his arrest.

---

[107]Exhibit AS at Tr. 52-54.

[108]Exhibit AT at Tr. 50-51.  Mr. Mott assumed, for purposes of this answer, that Peterson was lawfully entitled to be in the house.  If not, Mr. Mott's view is that no force should have been used since Peterson should not have been in the house.  However, Mr. Mott changed his opinion upon questioning by Plaintiff's attorney at Tr. 88.

[109]Exhibit AT at Tr. 78-79.

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 32 of 35

       E.    The Law Was Not Clearly Established That Pepper
           Spray Could Not Be Used Under The Totality Of The
           Circumstances.

       Even if this Court was to conclude that the use of
pepper spray violated Plaintiff's rights by being excessive, the
law was not clearly established that the officers could not use
such force under the circumstances.

       Peterson was faced with deciding how to handcuff a
drunken Plaintiff who had refused to put down a dangerous weapon,
the beer bottle.  Proceeding "hands-on" would have increased the
risk that Peterson would be hit by the bottle.  The law was not
clearly established that he should not have used pepper spray
under these circumstances.

       Holden saw Peterson struggling with Plaintiff and then
he struggled with Holden as both tried to handcuff him.  Under
these circumstances, it was not clearly established that Holden
could not use pepper spray to effectuate the arrest.[110]

       V.   MEDICAL CARE WAS NOT DENIED IN VIOLATION OF
           42 U.S.C. § 1983.

       Though Plaintiff's expert James Ellar has alleged that
Plaintiff did not receive proper medical attention for an injury

---

[110]See, Davis v. City of Albia, 434 F.Supp.2d 692,
708 (S.D. Iowa 2006) (Police officer entitled to
qualified immunity since law not clearly established
that the use of pepper spray on a traffic offender who
ignored a police directive and struggled during an
arrest was unlawful); see also, Wagner v. Bay City,
Texas, 227 F.3d 316, 324 (5th Cir. 2000) (officers
entitled to qualified immunity for pepper spraying a
physically resistant arrestee).

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary
Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 33 of 35

FRANK S. KOZIOL
ATTORNEY AT LAW
616 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

to his left foot,[111] this allegation was not set forth in
Plaintiff's complaint. Given the failure to allege such a § 1983
claim and due to the page restrictions on this brief, Defendants
will assume such a claim is not being advanced.  If such a claim
is advanced, Defendants will respond in their reply brief.

VI.    STATE CLAIMS SHOULD BE DISMISSED.

Plaintiff's State claims are essentially based upon
the alleged unlawfulness of the entry to Plaintiff's home
without a warrant.  However, just as with § 1983 immunity,
Defendants would have state law qualified immunity for the entry
based upon the same analysis as set forth previously.  This
would also apply to the claim of excessive force.

The qualified immunity standard would be the same
since the Alaska Supreme Court has recently adopted the
Saucier test in Sheldon v. City of Ambler.[112]
Therefore, at a minimum, the officers have qualified
immunity for any state claim of unlawful entry to the
house and of excessive force as previously set forth.

If Plaintiff believes that any other State claim would
survive such a qualified immunity ruling, the Defendants would
address that in subsequent briefing given the page restrictions
placed upon this brief.

VII. CONCLUSION.

For the aforementioned reasons, Defendants should be

---

FRANK S. KOZIOL
ATTORNEY AT LAW
818 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

[111]Exhibit AS at Tr. 108-109.

[112]178 P.3d 459, 463-464 (Alaska 2008).
Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary Judgment
Brown v. Peterson, et al., Case No. 3:05-cv-0002 [TMB]
Page 34 of 35

granted summary judgment.

LAW OFFICE OF FRANK S. KOZIOL
Attorney for Defendants Frank
 Peterson and Jeff Holden

Dated 5/23/2008          By: /s Frank S. Koziol
                             Law Office of Frank S. Koziol
                             618 Christensen Drive
                             Anchorage, Alaska 99501
                             Phone: 907-258-7706
                             Fax: 907-258-7707
                             Email: koziol@gci.net
                             ritagutierrez.koziol@gci.net
                             ABA No. 7210054

THIS IS TO CERTIFY that a copy of the foregoing was
served electronically and by U. S. Mail upon:

Robert M. Herz, Esq.
425 "G" Street, Suite 600
Anchorage, Alaska 99501


/s Frank S. Koziol 5/23/08

FRANK S. KOZIOL
ATTORNEY AT LAW
618 CHRISTENSEN DRIVE
ANCHORAGE, AK 99501
(907) 258-7706
FAX (907) 258-7707

Memorandum in Support of Defendants Peterson's and Holden's Motion for Summary
Judgment
*Brown v. Peterson, et al.*, Case No. 3:05-cv-0002 [TMB]
Page 35 of 35