KODIAK POLICE DEPARTMENT
NARRATIVE REPORT

| | |
|---|---|
| DEFENDANT: Scott Randel Brown | CASE NUMBER: 200300101 |
| LOCATION: 1219 Purtov Street | DATE/TIME: 1-4-2003 1653 Hrs |
| DISTRIBUTION: D.A.O. | DIST. BY/DATE: |

**INVESTIGATION:**

On Saturday, 1-4-2003, at approximately 1653 hours, the Kodiak Police Department received a telephone call from Laurie Skonberg reporting a golden colored flat-bed pickup truck had just left the Safeway parking lot at a high rate of speed. She stated she saw the vehicle spray gravel all over a woman standing in front of the store. Skonberg stated she followed the pickup truck and observed it lose control and do a "360" on Selief Lane. She stated she saw the vehicle go up Pillar Mountain road.

Another woman called and did not give her name. She stated she was in the Safeway parking lot when a golden colored pickup truck with dualies back sprayed gravel on her. She stated the passenger in the vehicle had dark hair and appeared to be scruffy from not shaving. The caller stated the driver of the vehicle had blond colored hair.

I headed toward the gravel pit on Pillar Mountain. I was near the water tanks on Pillar Mountain road when I observed two vehicles coming down Pillar Mountain road. I noted the second vehicle was a gold colored flat-bed pickup truck, bearing Alaska license "DWT484." I turned my vehicle around and followed the vehicle. I rounded the corner on Pillar Mountain Road, which turned into Maple Street. I observed the vehicle turn onto Madsen Road. I illuminated my overhead lights and followed the vehicle. I observed the vehicle turn onto Purtov Road and followed it. I observed the vehicle pull into the driveway of 1219 Purtov.

I observed a man jump from the driver side of the vehicle who I later identified as Scott Brown. I jumped out of my vehicle and yelled to the man to stop. I yelled several times and the man did not stop. The man entered the residence and started to shut the door. I was directly behind the man when he closed the door. I entered the residence and followed Brown through the residence to the what I assumed was the bathroom. I yelled through the door that I was the Kodiak Police and Brown needed to exit. I tried to open the door and felt resistance on the other side like he was holding the door closed. Brown's wife Beverly, was present and asked that she be allowed to try and get him out of the bathroom.

I observed as Beverly told Brown to exit the bathroom, and heard him say "Nope." She told Brown this was going to just cause a lot of problems. Brown continued to say, "no." I heard him state through the door that he had to "pee." Beverly told Brown that he was scaring her. I heard Brown say, "they're idiots Fuck them, I didn't do shit." Brown stated he was going to the bathroom, but continued to hold the door closed. Brown stated, "This is home Invasion. You guys are idiots." Brown said he was not going to leave the bathroom because he did nothing wrong. He stated, "I did nothing wrong. Why did they pu me over? I didn't do anything wrong."

Brown exited the bathroom. Beverly told him to sit down, which he did at the table. Brown stated he di nothing wrong and was wondering why I entered his house. I asked him how much he had to drink an he stated nothing. I informed that he was swaying where he was standing and he was having a har

| REPORTING OFFICER | TYPED BY/DATE | REVIEWED BY | PAGE NUMBE |
|---|---|---|---|
| KPD Officer Frank Peterson | 1K20 1-6-2003 | | |

10041

Ex. L, p. 1 of 6

KODIAK POLICE DEPARTMENT
NARRATIVE REPORT

| | | |
|---|---|---|
| DEFENDANT: | Scott Randel Brown | CASE NUMBER: 200300101 |
| LOCATION: | 1219 Purtov Street | DATE/TIME: 1-4-2003 1653 Hrs |
| DISTRIBUTION: | D.A.O. | DIST. BY/DATE: |

time walking. I noted the odor of alcohol on his breath and I noted his eyes were bloodshot and watery. I noted his speech was slurred.

Brown stated he wanted me out of his house. I told him that he just needed to cooperate with me. Brown asked me to tell him what he did. I told him that I thought he was intoxicated. Brown stated, "I'm not drunk." Brown stated he was just in his own bathroom. I told him that I followed him from outside and to his bathroom. I told him that I yelled for him to stop. He told me that was "bull shit."

Beverly asked me if her son could straighten the vehicle in the driveway since it was parked crooked. I told her that was alright. I informed Brown that I smelled the strong odor of alcohol on his breath and he stated he drank when he came in. Brown had stood up and had gone into the kitchen. He stated he was in his own house and would drink. He grabbed a beer bottle from next to the refrigerator. I pulled my pepper spray out and told Brown to put the beer down and he better not drink it. Brown stated, "no." I told him I would spray him if he did not comply. Brown brought the bottle to his lips and I sprayed him in the face. I stepped back thinking Brown would drop the bottle. He did not and proceeded to drink the beer. I took the bottle from Brown and dropped it on the floor.

A man who I later identified as Brown's brother, Damon Brown, approached me from behind. I instructed him to leave the kitchen and to go somewhere else. I saw him backing away and placed my attention on Brown. I saw him go to the sink and begin to wash his face. I allowed him to wash his face a little and then informed him again that he was under arrest. I attempted to place his right arm in handcuffs and Brown resisted. He would not allow me to place him in handcuffs. I struggled with his arm until Kodiak Police Officer Jeff Holden arrived on scene. Officer Holden approached while I was struggling with Brown and I observed him spray Brown in the face. Officer Holden and I proceeded to place Brown in handcuffs. Brown continued to resist by not allowing us to place him in handcuffs. I instructed him to stop resisting and to give me his arms. With Officer Holden's assistance I was able to place Brown in handcuffs.

While dealing with Brown I had looked over my shoulder and observed his brother, Damon, on the floor in what appeared to be a seizure. I saw that his brother was with him and heard Beverly calling 911 for an ambulance. After placing Brown in handcuffs, I instructed Officer Holden to stay with him. I entered the residence where I saw Damon entering the residence from a side patio door. I was told that Damon had suffered a back injury in the past. I observed he was on his feet and no longer in a seizure. I returned to Brown and assisted in escorting Brown outside.

Officer Holden and I brought Brown just outside the door when he told us his pants were falling down. I observed that Brown's pants were falling down and Officer Holden stated he would pull his pants up. Beverly stated she would pull his pants up and told Brown to be quiet and not to say anything. Beverly secured Brown's pants and Officer Holden and I escorted Brown to my vehicle. While walking to my vehicle, Officer Holden and I had to help Brown because he could not walk on his own. I watched

| REPORTING OFFICER | TYPED BY/DATE | REVIEWED BY | PAGE NUMBER |
|---|---|---|---|
| KPD Officer Frank Peterson | 1K20 1-6-2003 | | |

KODIAK POLICE DEPARTMENT
NARRATIVE REPORT

| | |
|---|---|
| DEFENDANT: Scott Randel Brown | CASE NUMBER: 200300101 |
| LOCATION: 1219 Purtov Street | DATE/TIME: 1-4-2003 1653 Hrs |
| DISTRIBUTION: D.A.O. | DIST. BY/DATE: |

Brown's feet while we were going to my vehicle and did not see him twist his ankle. I was watching his feet when he said he just twisted his ankle. It became harder to help Brown to my vehicle.

I got Brown to my vehicle and conducted a pat search for weapons or instruments of escape. I observed Officer Holden lock the handcuffs and confirmed they were double locked. I told Brown that he needed to enter my vehicle. He stated, "fuck you. I can't even see." I guided him to the entrance to the vehicle and told him that he just needed to step up. I told him that we would help him. Brown did not attempt to enter the vehicle. I told Brown that he needed to enter the vehicle and he stated his elbow hurt. I told him it would not have been hurt if he had cooperated. Brown became very belligerent. Officer Holden and I placed Brown in my vehicle and I went back into the residence.

I contacted Beverly in the residence and asked her if Brown had been drinking at their residence or somewhere else. Beverly Brown stated her husband had not been drinking there and must have been drinking somewhere else. Beverly asked me what had happened and I told her about the report we had received and what happened up to the point that I contacted her.

I transported Brown to the Kodiak Police Department. I arrived at the Kodiak Police Department at approximately 1716 hours. While I was assisting Brown out my vehicle he stated his ankle was broken. I asked Brown which of his ankles was broken. Brown told me his right ankle was broken. I helped Brown out of the vehicle and he did appear to have a broken ankle. I could tell that Brown still had difficulty opening his eyes. I guided Brown to the KPD Booking room through the garage. I instructed Brown to face the wall while I secured my side arm. I removed the handcuffs and guided Brown to a chair.

I provided Brown with a spray bottle full of water and a rag in order to decontaminate himself. I sprayed Brown's face first and instructed to continue spraying his face to help with the burning. I placed the bottle in Brown's hand so he knew where it was.

I attempted to get Brown's identification information, since I did not know his name or date of birth yet. Brown stated he wanted to speak with his lawyer. Brown stated he was not going to play any of my "games." He stated he was in the army and would only give name, rank and serial number. I asked Brown for his serial number. I requested that KPD Communications Officer Doug Croyle check the Alaska Public Safety Information Network for the identification number given by Brown. Officer Croyle informed me the social security number did come back to Scott Brown. I was able to identify Brown s I asked him if he wanted to speak with his lawyer. Brown stated he wanted to speak with Mr. Schmic I asked Brown if he wanted me to dial the phone number for him. Brown stated he would dial the numbe when he was able to see. I asked Brown if he wanted to wait. Brown stated he did want to wait.

Brown was very belligerent throughout the entire booking procedure. I informed Brown that whe someone is arrested for DWI, they are required to provide a sample of their breath for testing. Brov

| REPORTING OFFICER | TYPED BY/DATE | REVIEWED BY | PAGE NUMBE |
|---|---|---|---|
| KPD Officer Frank Peterson | 1K20 1-6-2003 | | |

10043

Ex. L, p. 3 of 6

KODIAK POLICE DEPARTMENT
NARRATIVE REPORT

| DEFENDANT: | Scott Randel Brown | CASE NUMBER: 200300101 |
|---|---|---|
| LOCATION: | 1219 Purtov Street | DATE/TIME: 1-4-2003 1653 Hrs |
| DISTRIBUTION: | D.A.O. | DIST. BY/DATE: |

stated he was not under arrest for DWI, he was not driving drunk. Brown told me to "shut up." Brown did not appear to be listening to me because he was yelling at me while I was trying to speak. I read to him the Implied Consent Warning. While I was reading the warning, Brown was yelling at me. After reading the warning, Brown stated he wanted to speak with his attorney. I informed Brown there was a phone available and he could use it whenever he wanted.

I asked Brown if he was going to provide a breath sample and he said that he would as soon as his attorney arrived. I informed Brown that his attorney was not going to be present. I was not questioning him and did not read him the Miranda Warning. I informed Brown that he could call his attorney over the phone and speak with him. Brown stated, "I did not drive my truck while drinking any alcohol." I asked Brown if he was going to call his attorney. Brown stated he would try. I asked Brown if he wanted me to dial the number for him. Brown stated, "I don't want you to do shit for me."

I asked Brown if he was going to call. He stated, "You know what though? You already got me out of my house. Shit. I drank my aftershave and my goddamn lotion. What the fuck." Brown stated he drank the lotion and aftershave while he was in the bathroom. I asked Brown how big his aftershave was and he stated he had Jack Daniels. I asked Brown if he was going to provide a sample of his breath. He stated he would.

Brown stated he could hardly see and how was he supposed to dial. I asked Brown if he wanted me to dial the number and he said he did not trust me. I asked him if he wanted Alaska State Trooper Chris Hill to dial the phone number for him. Brown declined to have the trooper dial the number. Brown asked me what I wanted of him. I told him that I wanted a sample of his breath. Brown stated he would not concede to anything. I asked him if that meant he was not going to provide a sample of his breath. Brown stated, "I'm going to give you any fucking thing you want."

Brown stated he could not see anything and wanted that to be placed on record. Brown stated he could not do anything and that I would not give him his lawyer or call the lawyer. I asked Brown if he wanted me to call his lawyer. Brown stated he wanted to call his own lawyer and wanted me to clean his eyes. Brown stated to me, "you're so full of shit that if I met you on a country road, I'd beat the piss out of you."

I left the room to talk with Officer Holden and left Trooper Hill with Brown. I returned and found Trooper Hill on the phone. Trooper Hill stated Brown had requested that his lawyer be called. I waited a Trooper Hill talked on the phone with someone. He hung the phone up and stated Brown's lawyer wa at church. I informed Brown that his lawyer was at church. Brown stated, "take me home." I told hir that he was not going home that he was under arrest for DWI. Brown stated, "Bull shit, I aint fuckin drunk. I'm fucking stoned on goddamn pepper spray or whatever the fuck that was."

I informed Brown that we had to wait 15 minutes before he provided a breath sample. Brown stated h wanted to speak with his lawyer. I informed him again that his lawyer was at church and we could n

| REPORTING OFFICER | TYPED BY/DATE | REVIEWED BY | PAGE NUMBE |
|---|---|---|---|
| KPD Officer Frank Peterson | 1K20 1-6-2003 | | |

10044

Ex. L, p. 4 of 6

KODIAK POLICE DEPARTMENT
NARRATIVE REPORT

| | | |
|---|---|---|
| DEFENDANT: | Scott Randel Brown | CASE NUMBER: 200300101 |
| LOCATION: | 1219 Purtov Street | DATE/TIME: 1-4-2003 1653 Hrs |
| DISTRIBUTION: | D.A.O. | DIST. BY/DATE: |

contact him. Brown stated he was not guilty of anything. I informed Brown that he was not to put anything in his mouth and not to burp anything up. Brown stated he would give me anything I wanted. He stated he would urinate in my pocket if I wanted him to. Brown stated, "You know what? I'm going to get you." Brown stated I was wrong and he was not drunk. Brown stated I was going to pay for spraying him.

Brown stated he was in the passenger seat of the vehicle. I asked him why he got out of the driver seat and he stated that was the way he always gets out of his truck. I asked Brown why he did not tel me that when I first contacted him. I asked Brown who was driving the vehicle and he stated he did not know who was driving.

The 15 minute observation was almost complete and Brown took off his left shoe. He told me to look at what had happened to his ankle. I informed Brown that he had told me his right ankle was the one that was injured. Brown did not respond. Brown requested to speak with his lawyer again. I watched as Trooper Hill attempted to contact Brown's lawyer. Trooper Hill stated he left a message for Brown's lawyer to call. Brown stated he was not drunk and he was not even driving.

At approximately 1751 Brown provided a breath sample for the DATAMASTER cdm. Brown blew very hard into the instrument and the instrument showed the test was invalid. Trooper Hill informed me that the test might have been invalid because he blew so hard. I noted a strong odor of alcohol in the air which might also have resulted in an invalid test. I told Brown that the test was invalid and he needed to provide another sample of his breath.

Brown dialed his lawyers number and spoke on the phone for a bit. We were later informed that Brown had a call from his lawyer. The call was transferred to the booking room and Brown spoke with him. Following the call, Brown stated he would provide a sample of his breath.

I gave Brown several more opportunities to provide a sample of his breath. Brown burped during the second opportunity. I informed him again that he was not to burp. Brown was talking with his lawyer during one of the attempts and the observation period had to be started again. He intentionally burped during the remaining four opportunities. I informed Brown each time that he was not to burp. Brown di so anyway. After the last opportunity I told Brown that he was being charged with failure to provide breath sample for a chemical test. I read the Notice and Order of Revocation form.

Brown requested to use the bathroom and I told him to wait a few seconds while I finished filling out on of the forms. He asked me if I wanted him to urinate in the garbage or on the floor. He began to und his pants. I finished the paperwork and I accompanied him to the bathroom. After finishing, Brow requested to be allowed to provide a sample of his breath. I informed him that I would give him one la opportunity but he was not to burp at all or place anything in his mouth. Following the 15 minu observation period, Brown stated he had not burped at all. At approximately 1850 hours, Brown provide

| REPORTING OFFICER | TYPED BY/DATE | REVIEWED BY | PAGE NUMBE |
|---|---|---|---|
| KPD Officer Frank Peterson | 1K20 1-6-2003 | | |

10045

KODIAK POLICE DEPARTMENT
NARRATIVE REPORT

| | |
|---|---|
| DEFENDANT: Scott Randel Brown | CASE NUMBER: 200300101 |
| LOCATION: 1219 Purtov Street | DATE/TIME: 1-4-2003 1653 Hrs |
| DISTRIBUTION: D.A.O. | DIST. BY/DATE: |

a sample of his breath for the DATAMASTER cdm., resulting in a Breath Alcohol Concentration of .185.

I filled out a new revocation form and read that to him. Brown signed the form after having any questions answered. I read the Notice of Right to an Independent test of blood. Brown checked the section where it states he wanted a chemical test at his own expense. Brown did not sign the form. He stated he wanted to do whatever was most difficult for me. I told him that it was his decision and he refused to decide.

I remanded Brown to the custody of the Corrections Officer on duty.

**EVIDENCE:**

PIR 8304

**ATTACHMENTS:**

DATAMASTER cdm Checklist
Implied Consent Warning
Notice of Right to an Independent test of blood
Notice and Order of Revocation

| REPORTING OFFICER | TYPED BY/DATE | REVIEWED BY | PAGE NUMBE |
|---|---|---|---|
| KPD Officer Frank Peterson | 1K20 1-6-2003 | | |