### Page 74

with as an infraction. But the supreme court of the United States said, the police cannot come into the house unless it's a very serious offense. And they found then that a DWI was not a serious -- serious enough to warrant or to justify a warrantless entry into the home under the hot pursuit document.

THE COURT: Well, as I read Welsh, they said that there wasn't a valid hot pursuit because of the lack of immediate and continuous pursuit from the scene of the alleged crime to the residence. Did Welsh really turn on the nature of the offense?

MR. SCHMITT: Well, subsequent cases, the other cases in other states that have addressed it, they said, yes, it did, because Welsh was this -- well, the supreme court indicated that had it been a more serious -- had it been at the felony level, obviously, as is the prevailing law in Alaska, the warrantless entry could have been made.

But again I cited other cases in my response where the officers had some personal knowledge, something else that would truly indicate there was a DWI other than a second-hand report, particularly after they've had -- their personal observations of the individual shows that he's a law abiding citizen. The short period of time that Mr. Brown was followed by Officer Peterson, he obeyed the traffic laws, didn't do anything illegal. There was nothing that justified Officer Peterson to go through the door. He should have stopped at the door, knocked, announced who he was, and dealt with it in that

### Page 75

fashion, Your Honor. The Constitution protects the sanctity of that door.

THE COURT: I'm trying to find the elements for eluding, and it's usually captioned as a failure to stop at the direction of a police officer, and I can't find it. Anybody know where it is? Is it Title 11, Title.....

MR. SLUSSER: I would (indiscernible) -- could I.....

THE COURT: Driving.....

MR. SCHMITT: Would it be resisting arrest?

MR. SLUSSER: Yeah, I would think it was in Title 11, but it could be Title 28. If I -- I could call the -- call the officer or something, Your Honor. I'm sorry, I didn't bring the statutes.

THE COURT: Let me see if I can find it in 28 while we're here.

(Pause)

MR. SLUSSER: I know reckless driving is listed in there, which is also cited.

(Pause)

THE COURT: Okay. It looks like it's 28.35.182. A person commits the offense of failure to stop at the direction of a peace officer in the first degree, which is an A misdemeanor, if the person violates (b) of this section, and during the commission of that offense violates 28.35.040, reckless driving, commits vehicle theft, first or second degree, or an

### Page 76

accident occurs. And then the same offense, second degree, if while operating a motor vehicle, knowingly fails to stop as soon as practical and in a reasonably safe manner under the circumstances when requested or signalled to do so by an officer.

(Pause)

THE COURT: Okay. So what do you think about the offense of eluding? Was there a basis for the officer to conclude he could have arrested him for eluding? That is, was eluding committed in the officer's presence?

MR. SCHMITT: I don't see it under these facts, Your Honor. And again the video tape is the best indicator of those facts. There's nothing -- Officer Peterson is going to remember the things that fit within his view of it, but he did use his siren, he was so far back behind Mr. Brown, Mr. Brown didn't have a reasonable basis to believe he was being pursue. How did he know he was supposed to stop if he didn't know he was being pursued. And, you know, he stopped his motor vehicle. I mean, exactly what -- even the best fact, if the court chooses to believe this testimony, and there's a conflict in the testimony, but assuming that Officer Peterson did say something after he got out of his vehicle, at that point Mr. Brown had already stopped his vehicle. And I believe the statute that you read makes reference to failing to stop the vehicle when being instructed to do so.

### Page 77

THE COURT: A person knowingly fails to stop as soon as practical and in a reasonably safe manner under the circumstances when requested or signaled to do so by a peace officer. Okay.

MR. SCHMITT: He had already stopped his vehicle.

THE COURT: And are you agreement wit the state then that the current state of the law does not require a felony or an otherwise grave offense, serious offense to have occurred for the hot pursuit exception doctrine to apply?

MR. SCHMITT: No, I do not agree with Mr. Slusser on that point.

THE COURT: So you think -- so you think it requires one of those types of offenses?

MR. SCHMITT: That's correct, Your Honor.

THE COURT: Well, what about Wilson?

MR. SCHMITT: Well, Your Honor, the cases that really address the Fourth Amendment and the hot pursuit exception go on for several pages. Zen versus State, Shraft versus State, where the court really anatomizes it. Wilson, they have a fairly short paragraph. They don't get into it at any length at all, and it's -- I just -- I'm quite -- well, it's a greenhouse, it's not a house. The Fourth Amendment talks about the house. The police could enter a yard without a warrant. They can't get into your house without a warrant, Your Honor, without a legitimate exception, and a greenhouse is not a

TRANSCRIPT OF PROCEEDINGS          4/3/2003                STATE OF AK v. BROWN
Vol. 1                                                     3KO-S03-012 CR

21 (Pages 78 to 81)

### Page 78

1  house.
2      So Wilson, I -- there are a lot of issues in Wilson. It's
3  a -- it covers sentencing issues as well as a different DWI,
4  but in a real short paragraph, the court says that the police
5  didn't need an affidavit, but also -- I mean, didn't need a
6  warrant, but also, and the court noted when it was asking Mr.
7  Slusser, the police there actually saw significant offenses,
8  significant arrestable offenses being committed in their
9  presence, so they had the grounds for arrest.
10     THE COURT: Yeah, but those were not felonies, were they?
11     MR. SCHMITT: No, but they did have grounds, probable
12 cause for arrest under the state statute.
13     THE COURT: Okay. And -- but you just told me it required
14 a felony or a serious offense for the hot pursuit exception to
15 apply.
16     MR. SCHMITT: Well, because it's a greenhouse here in this
17 -- under these facts, the facts of Wilson.
18     THE COURT: So it doesn't require a felony if it's other
19 than a house?
20     MR. SCHMITT: Yes, that's the.....
21     THE COURT: Well.....
22     MR. SCHMITT: .....the current law in Alaska. I haven't
23 found.....
24     THE COURT: So.....
25     MR. SCHMITT: .....any other cases that.....

### Page 79

1      THE COURT: So you're saying there are two standards of
2  protection. One is for the house and one is for the tute --
3  the curtilage on how to apply this hot pursuit exception?
4      MR. SCHMITT: That seems to be the case in Alaska, Your
5  Honor. If you want to reconcile Wilson with Zen and Shraft.
6      THE COURT: Well, do you think that Alaska law is
7  different from some other jurisdictions?
8      MR. SCHMITT: Yes. Again, we don't have any other cases
9  cited by the state. I did offer three of them in my reply.
10 But again the facts that were there that really made it much
11 more of a bona fide hot pursuit was where the officers had the
12 personal knowledge. You know, it's similar to the Alaska
13 statute that, you know -- I mean, where the officers do have
14 the grounds to arrest for a misdemeanor if it's committed in
15 their presence. And the officers in those other cases had that
16 type of probable cause. It's missing here, Your Honor. It is
17 simply missing.
18     (Pause)
19     THE COURT: Okay. Anything else?
20     MR. SCHMITT: No, Your Honor. That's it.
21     THE COURT: Okay. And any rebuttal? It is.....
22     MR. SLUSSER: Yes, Your Honor.
23     THE COURT: Okay.
24     MR. SLUSSER: Just a few things. Look -- and what I'm
25 about to say is not in any case. It's just common sense, and

### Page 80

1  maybe some logic or what's appropriate under the Fourth
2  Amendment.
3      I would just throw this out for the court's consideration,
4  and I -- you know, I don't mean this in a frivolous manner, but
5  when we were all kids, Your Honor, you know, we all played this
6  game of tag where, you know, if you could get to -- if you
7  would get to a sanctuary, if you would get to what we called
8  goal as kids, you were safe. You couldn't be tagged, you
9  couldn't be it. I'm not being silly with this, Your Honor, I'm
10 actually trying to hold aloft a concept here.
11     This hot pursuit -- you know, what is the basis for the
12 hot pursuit doctrine? You know, I would say -- in trying to
13 really analyze what's going on here in the back of our minds
14 when we allow this type of entry, what we're really saying is
15 it is not an affront, it is not an affront to the Fourth
16 Amendment to not allow this type of, okay, I made it, I made it
17 to a -- my sanctuary, I made it to a goal, you can't get me
18 now. It is just not under the case law an affront to the
19 Fourth Amendment, and that's what's really going on here.
20     I'll just drop that whole line, but I think it's worth
21 just trying to figure out what is really -- and you won't find
22 this is in the cases, I admit it, but what's really going on
23 there.
24     THE COURT: Well, there.....
25     MR. SLUSSER: Yeah.

### Page 81

1      THE COURT: .....is a New Jersey case where the state made
2  that argument and the supreme court of New Jersey rejected it.
3      MR. SLUSSER: Yeah. By the way, I cited more than just
4  Wilson. I cited an Ohio case I thought it was. I cited a
5  recent supreme course case. And if the court wants to do a
6  survey of the cases on this point, I'm quite confident that the
7  state's going to prevail on this motion, so what I'm saying is
8  I believe the great weight of persuasive story is with Alaska
9  as it's announced in the Wilson decision.
10     And for that matter, you know, Wilson could have very --
11 you know, the court in Wilson, the appellate court knows the
12 difference, knows what a curtilage is, knows the difference
13 between outbuildings and the actual house. You know, they're
14 capable of deciding a case on that basis if they want to.
15 There was no mention of that type of distinction that the
16 defendant is trying to extract in this case. They simply said,
17 you know, hot pursuit doesn't apply in this type of situation.
18 And that's how you have to read Wilson.
19     Anyhow, I'd just also point out, you know, as to the
20 eluding or as to the DWI -- well, let's just talk about the
21 eluding. Probable cause. You know, this isn't that we have to
22 prove it beyond a reasonable doubt. We've got to show there's
23 a good reason to -- a good reason to believe that express --
24 eluding may have occurred. He parks the car at an angle, at an
25 angle that is so odd that according to the testimony that the

Page 82

1  court heard, the wife had to get permission from the police for
2  the son to go out and park this car correctly.
3      If the court sees on the video tape, looks at it again,
4  but I'm -- I had to look at it several times, you can see the
5  flashing lights going on. You've got the -- for a substantial
6  part of the chase. You've got Damon Brown admitting that
7  before they stopped the vehicle, he rem -- he noticed the
8  flashing lights, and you've got -- and he says -- it would be
9  amazing to me if they didn't remark to each other, you know,
10 that there's a police officer behind.
11     You've got the officer's testimony that he was yelling to
12 him to stop. That's certainly before they entered the house.
13     THE COURT: But that's not eluding. Eluding deals with
14 stopping a motor vehicle.
15     MR. SLUSSER: Yeah, Your Honor, but it -- that and, for
16 instance, what occurred in the bathroom with him holding his
17 weight against the bathroom, that's all -- forms the context of
18 the entire situation, the res justi or whatever the heck you
19 want to call it. It bears circumstantially on the -- on what
20 was going on there. I guess we've got to look at -- we can't
21 look at what -- look, we can't look at what happened in the
22 bathroom, I'll agree to this, because that was after the
23 officer's entry in the house. But the officer can see him
24 running, and that -- from him as he's telling him to stop, Your
25 Honor, and that was before the officer entered the house, and

Page 83

1  the officer is entitled to use that as additional basis for
2  probable cause that the person was fleeing from him in the car.
3      The court can also see from the tape that the other
4  gentleman, before he hid the beer, the 18-pack of beer, and by
5  the way he had a beer in his hand the court can see, he took
6  about, I don't know, what, six or seven seconds to get out of
7  the car, whereas Mr. Brown's exit of the vehicle was
8  instantaneous nearly. You can't see Mr. Brown, but you see the
9  door open and close.
10     All of this together is a good reason to believe that
11 there was alluding.
12     There's also probable cause to believe a DWI. You can
13 base a DWI not just on what you observe, a DWI stop, but upon
14 what dispatch tells you. That's just -- I don't think Mr. -- I
15 would be amazed if Mr. Schmitt disputed that. Is he saying
16 that you cannot base a DWI stop or detention on what dispatch
17 has told you? That to me is an incredible assertion to say
18 that the state can't do that. I guess we'd have to throw out
19 half -- I don't know about half, but we'd have to throw out a
20 lot of our DWI stops. Of course you can base you probable
21 cause upon second-hand information that you get from dispatch.
22 It's got to be a credible source.
23     But there was lots of probable cause here. Maybe the
24 officer couldn't sustain a conviction on what he had prior to
25 entry, but probable cause, of course.

Page 84

1  11:51:13
2      (This portion previously transcribed)
3  12:07:45
4      MR. SLUSSER: Yes. One more thing, Your Honor. Just a
5  motion for -- a very narrow motion for reconsideration.
6      THE COURT: I'm really not going to rehear things. I just
7  made my findings and conclusions.
8      MR. SLUSSER: Well, the court has overlooked something,
9  and if you would just bear with me, I think the court will
10 understand what I'm talking about. I'm not trying to ask the
11 court to reconsider anything that's decided.
12     THE COURT: I'm not going to reconsider it now.
13     MR. SLUSSER: Does the court's ruling apply to all the
14 counts, Your Honor?
15     THE COURT: It applies to all evidence that was.....
16     MR. SLUSSER: The original motion practice didn't address
17 the subsequent......
18     THE COURT: I don't know how it applies. I just said that
19 the evidence must be suppressed, and the argument was made by
20 the defendant under evidence rule 4-12 saying that evidence
21 could not be admitted or used if it was obtained illegally or
22 unlawfully, and I found that it was obtained unlawfully.
23     MR. SLUSSER: If I could just explain to the court what I
24 mean, I think the court will understand what I'm getting at.
25     THE COURT: Okay. All right.

Page 85

1      MR. SLUSSER: Just very briefly. I'm not trying to waste
2  the court's time, Your Honor.
3      Count III is tampering with -- well, count II is tampering
4  with evidence. That should not be suppressed. That
5  involves.....
6      THE COURT: I don't think this has been briefed, so I
7  don't think I can make a ruling. This is a whole new issue.
8  The motion was made when there was only a DUI misdemeanor
9  complaint pending, and the two additional felony counts were
10 not. And so if there's a question about how far the ruling
11 applies or to what offense it applies to, you have to brief
12 that. I can't rule on that. Nobody's partied that.
13     Okay. Everyone on this case is.....
14     (Off record)
15 12:09:27
16     (END OF REQUESTED PORTION)

| TRANSCRIPT OF PROCEEDINGS | 4/3/2003 | STATE OF AK v. BROWN |
|---|---|---|
| Vol. 1 | | 3KO-S03-012 CR |

23 (Page 86)

Page 86

1    TRANSCRIBER'S CERTIFICATE
2    I, Joseph P. Kolasinski, hereby certify that the foregoing
3    pages numbered 3 through 85 are a true, accurate, and complete
4    transcript of proceedings in Case No. 3KO-03-12 CR, State of
5    Alaska versus Scott R. Brown, transcribed under my direction
6    from a copy of the electronic sound recording to the best of
7    our knowledge and ability.
8
9    11/22/06          [signature]
     Date    Joseph P. Kolasinski
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Computer Matrix, LLC          Phone - 907-243-0668          jpk@gci.net
310 K Street, Suite 200       Fax     907-243-1473          sahile@gci.net