IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT

STATE OF ALASKA, )
                 )
     Plaintiff,  )
                 )
vs.              )
                 )
SCOTT BROWN,     )
                 )
     Defendant.  )
_____)

Case No. 3KO-03-0012 Cr

**VRA CERTIFICATION**

I certify that this document and attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is used to identify the place of the crime or an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

## MOTION FOR RECONSIDERATION

Comes now the State of Alaska, by and through counsel, and moves the court for an order reconsidering the court's ruling of April 3, 2003 granting the defendant's Motion to Suppress Evidence. This motion is supported by the pleadings, the record, and the attached Memorandum of Law.

Dated at Kodiak, Alaska on April 7, 2003.

GREGG D. RENKES
ATTORNEY GENERAL

J. MICHAEL GRAY
DISTRICT ATTORNEY

By: _____
Joseph S. Slusser #8206063
Assistant District Attorney

THE UNDERSIGNED HEREBY CERTIFIES THAT ON THE 7th DAY OF April 20 03 THE ATTACHED DOCUMENTS WERE HAND DELIVERED Schmitt ON THE ATTORNEYS OF RECORD

000289

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT

STATE OF ALASKA,        )
                        )
            Plaintiff,  )
                        )
vs.                     )
                        )
SCOTT BROWN,            )
                        )
            Defendant.  )
_____)
Case No. 3KO-03-0012 Cr

**VRA CERTIFICATION**
I certify that this document and attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is used to identify the place of the crime or an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court.

## MEMORANDUM IN SUPPORT OF MOTION FOR HEARING REGARDING EXECUTION OF SENTENCE

On April 3, 2003, when granting the defendant's Motion to Suppress, the court relied upon the treatise of Professor LaFave. At the same time, the court did not accept the state's argument that the "hot pursuit" doctrine applied to those circumstances where the state had merely a right of investigative detention, as opposed to a full-fledged right to arrest.

Attached is Professor LaFave's view on this latter matter, which coincides with the state's position. Professor LaFave states, in pertinent part:

> A related question, confronted in *Edwards v. United States*, is whether a police officer who confronts a citizen on a public street, without probable cause to arrest but with grounds to stop, is barred from pursuing that suspect into private premises when he seeks sanctuary there in response to the officer's request to

1

000290   4-7

stop. The *Edwards* court quite logically responded:

> We are of the opinion that the Supreme Court's recent decision in *United States v. Santana* requires a negative answer to this question. We read the gravamen of the Court's holding in *Santana* to be that when a citizen has knowingly placed himself in a public place and valid police action is commenced in that public place, the citizen cannot thwart that police action by then fleeing into a private place. In the instant case, appellant and his companion were in a public place when Detective Jackson sought to effect a valid Terry stop and appellant then tried to thwart that stop by running into the building before the pursuing policeman--six or seven strides behind--could catch him. Given these particular circumstances, we conclude the officers here should not have been forced to simply "shrug [their] shoulders and allow a crime to occur or a criminal to escape."
>
> The same result has been reached when the officer, who already possessed grounds to stop, was unable to announce that intention because of the suspect's flight indoors. See LaFave, <u>Search and Seizure, A treatise on the Fourth Amendment</u>, Third Edition, Sec. 9.2(d), Volume 4.

The state urges the court to accept this authority, for several reasons. The court based its decision granting the Motion to Suppress, citing authority from Professor LaFave. Moreover, although the court previously declined to accept the above proposition, the court should recall that no authority has been mentioned by anyone, including the defendant and the court, which contradicts Professor LaFave's position.

The court should accept that Officer Peterson would have been able to conduct a *Terry* type stop at least based upon the two reports of reckless driving. Both DUI and reckless driving stops

have been upheld for less reason. If the court is concerned that the officer didn't actually see the reckless driving, it should be aware that an Officer may conduct an investigative stop based upon information relayed to him by dispatch, that the information need not be personally observed by the officer. Cruz v. State, 584 P.2d 1141, 1144 (Alaska 1978); State v. Prater, 958 P.2d 1110 (Alaska App. 1998).

The court should reconsider for other reasons as to Count II, Tampering with Evidence. According to the evidence presented to the grand jury, the defendant intentionally consumed alcohol in the house, despite a command of the office to stop. According to the grand jury, the defendant intentionally consumed alcohol with the object of altering his own physiological evidence to frustrate the Datamaster evidence, making it difficult to distinguish between alcohol in the system before the defendant drove and after the defendant drove.

Even if evidence could somehow be suppressed for purposes of the DUI and Assault III charge, it would not be suppressed for purposes of the new charge which arose out of conduct occurring within the search itself. Mr. Brown is charged with evidence tampering. There is absolutely no affirmative defense to this charge which allows a defendant to destroy evidence which might later be suppressed in a valid court proceeding. Even could it somehow be shown that an illegal search occurred, the defendant is not justified in destroying evidence.

By way of another example, had Mr. Brown, upon being

3

illegally searched (in his opinion), drawn a Ruger .44 magnum and shot Officer Peterson between the eyes, neither the gun nor the bullets would be suppressed. Nor would homicide charges be dropped simply because the defense might show the initial search was improper. Suppression, if any, would only pertain to the original charge that occurred before the search itself. There is no affirmative defense to the law, that allows a suspect to shoot dead or stab an officer or even destroy evidence where the bounds of a proper search may have been exceeded. Evidence which existed prior to the new offense and relating to an original DUI offense might be suppressed as to that charge only; but, new evidence, generated as a result of a new crime committed in the context of the search would not be suppressed.

For these reasons, the state respectfully requests that the Motion to Reconsider be reviewed.

Dated at Kodiak, Alaska on April 7, 2003.

GREGG D. RENKES
ATTORNEY GENERAL

J. MICHAEL GRAY
DISTRICT ATTORNEY

By: _____
Joseph S. Slusser #8206063
Assistant District Attorney

District Attorney, State of Alaska
424 Marine Way, Suite 202
Kodiak, Alaska 99615
486-5744

4

000293

04/03/03  THU 17:05 FAX 1 907 269 6270    AK DEPT OF LAW - OSPA    →→→ DAO KODIAK    ⌀002

# SEARCH AND SEIZURE

## A Treatise

## on the

## Fourth Amendment

### Third Edition

By

**WAYNE R. LaFAVE**

David C. Baum Professor of Law Emeritus
and Professor Emeritus in the Center for Advanced Study
The University of Illinois

### Volume 4

Sections 9.1 through 10.11

CRIMINAL PRACTICE SERIES

ST. PAUL, MINN.
**WEST PUBLISHING CO.**
1996

000294

ST V. SCOTT BROWN
3KO-S03-12CR

§ 9.2(d)   STOP AND FRISK & LESSER INTRUSIONS   Ch. 9

it would be frustrating and humiliating to the officer to grant him an authority to order persons to stop, and then ask him to stand by while his order is flouted. Nor is it anomalous that this section authorizes force to compel the persons to stop but relies thereafter on the person's cooperation. Certainly a person who has had to be forcibly stopped is unlikely to prove cooperative thereafter, but the officer may wish to immobilize such a person in order to check a description or identification, or simply to procure a period of time during which he can decide whether to make an arrest. By this provision he is not forced to arrest at once.

There is ground for concern that encounters in which moderate force is used may escalate into deadly force; but this possibility does not seem so serious as to warrant rejecting an authority which is essential to a coherent scheme of police powers. Moreover, if force were not authorized to enforce an order to stop, in all probability it would be used anyway, because a person who flees upon an order to stop will usually be subject to lawful arrest and thus the force authorized to effect an arrest. The net effect of authorizing force is, therefore, to allow the officer to avoid making an arrest in cases where the circumstances would usually justify this more drastic alternative.[106]

It does not follow, of course, that force may be used when it does not serve to bring about the seizure or the permissible frisk for weapons and instead is undertaken for some other purpose, such as to prevent loss of evidence.[107]

A related question, confronted in *Edwards v. United States*,[108] is whether a police officer who confronts a citizen on a public street, without probable cause to arrest but with grounds to stop, is barred from pursuing that suspect into private premises when he seeks sanctuary there in response to the officer's request to stop. The *Edwards* court quite logically responded:

---

Duke L.J. 849, 906, 908 (1985), first concluding that "a complete fourth amendment prohibition against the use of deadly force to make investigatory stops may be appropriate," and thereafter suggesting: "Even if the exhibition or threatening display of a firearm does not constitute prohibited deadly force in the context of an arrest, perhaps it is of sufficient incremental intrusiveness in the nonarrest detention context that it should be limited or prohibited there."

106. Model Code of Pre-Arraignment Procedure 284–85 (1975).

107. Commonwealth v. Hunt, 280 Pa.Super. 205, 421 A.2d 684 (1980)(in making stop officer grabbed suspect by throat to prevent swallowing of suspected drugs; held, "even assuming that the officer had sufficient information for a *Terry* stop, there was nothing to indicate that appellant was armed and dangerous, and the record provides no support at all for a conclusion that the search by grabbing appellant's throat was in any way related to the safety of the officer or anyone else").

108. 364 A.2d 1209 (D.C.App.1976). Later, upon an en banc rehearing, the police action was upheld on the ground that there had been probable cause to arrest. 379 A.2d 976 (D.C.App.1977).

44

000295

Ch. 9

t him
nd by
ction
eafter
to be
it the
eck a
time
r this

lerate
does
ich is
force
lity it
ler to
force
ce is,
cases
rastic

s not
s and
es of

is
treet,
from
tuary
court

drugs;
er had
stop,
pellant
record
lusion
llant's
safety

.1976).
he po-
d that
arrest.

Ch. 9    PERMISSIBLE "STOP": DIMENSIONS    § 9.2(d)

We are of the opinion that the Supreme Court's recent decision in *United States v. Santana*,[109] * * * requires a negative answer to this question. * * * We read the gravamen of the Court's holding in *Santana* to be that when a citizen has knowingly placed himself in a public place and valid police action is commenced in that public place, the citizen cannot thwart that police action by then fleeing into a private place. In the instant case, appellant and his companion were in a public place when Detective Jackson sought to effect a valid *Terry* stop and appellant then tried to thwart that stop by running into the building adjacent to the street and gaining his apartment before the pursuing policeman—six or seven strides behind—could catch him. Given these particular circumstances, we conclude the officers here should not have been forced to simply "shrug [their] shoulders and allow a crime to occur or a criminal to escape." * * *.[110]

The same result has been reached when the officer, who already possessed grounds to stop, was unable to announce that intention because of the suspect's flight indoors.[111] It does not necessarily follow, of course, that police could in the first instance make a nonconsensual entry[112] of private premises in an effort to confront a suspect they had not already just attempted to stop on the street.[113] In such circumstances, there is lacking the rather appealing circumstance that the suspect has only himself to blame for the fact that the encounter has been moved from a public to a private area. It thus may be no accident that those cases

---

109. 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). On entry of premises to arrest, see § 6.1.

110. Consider also United States v. Gomez, 633 F.2d 999 (2d Cir.1980)(person stopped retreated into nearby apartment; court indicates force can be used when individual will not stop, but asserts that the "agents' initial kicking and banging on the door give us considerable pause"); People v. Rivera, 233 Ill.App.3d 69, 174 Ill.Dec. 226, 598 N.E.2d 423 (1992)(pursuit of suspected drug seller from public to private area of tavern); Commonwealth v. Daniels, 280 Pa.Super. 278, 421 A.2d 721 (1980)(suspect at door did not explain suspicious circumstances but instead walked back into apartment; proper for police to follow, as they "could not continue their inquiry without following Daniels").

111. United States v. Pace, 898 F.2d 1218 (7th Cir.1990)(surveillance of suspected hit men; one apparently discovered tail and speeded into garage area of his condo; it reasonable for officer to follow and make stop there; court stresses those circumstances and that the need "to investigate a possible threat to Savides' life" outweighed the intrusion, "a brief detention, in a garage, to allay his suspicions").

112. Compare United States v. Mejia, 953 F.2d 461 (9th Cir.1991)(where defendant's wife consented to police entry and she then awakened him in presence of police, this was not an arrest; Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), distinguished); McDwain v. United States, 568 A.2d 470 (D.C.App. 1989)(where child molestation in home, lawful *Terry* detention of boarder occurred within where police admitted by residents who members of victim's family).

113. In Hayes v. Florida, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985), holding a warrantless stationhouse detention for fingerprinting on less than probable cause is unreasonable, the Court in dictum indicated fingerprinting would sometimes be permissible in the context of an on-the-street *Terry* stop. But the Court then added this cautionary note: "Of course, neither reasonable suspicion nor probable cause would suffice to permit the officers to make a warrantless entry into a person's house for the purpose of obtaining fingerprint identification."

45

000296

Ex. AC, p. 8 of 9

§ 9.2(d)   STOP AND FRISK & LESSER INTRUSIONS   Ch. 9

holding entry of a building is not permissible on reasonable suspicion all involved fact situations in which that circumstance was absent.[114] But when, as in those cases, there is no hot pursuit from a public area it is permissible for police to come onto the curtilage in order to make the stop.[115]

Library References:
C.J.S. Arrest §§ 41, 42.
West's Key No. Digests, Arrest ⟸63.5(9).

(e) **Claim of greater authority.** Since *Terry*, it has been clear that there are two different police responses, both involving a seizure under the Fourth Amendment, which may be employed against a person suspected of crime: an arrest, which requires full probable cause, but which gives the officer considerable leeway as to the incidental search;[116] and a stop, which requires a lesser amount of evidence[117] and permits, at best, an incidental frisk.[118] If the officer perceives (or, perhaps, announces) at the time of his conduct that it is only a stop, is the government estopped from later justifying the conduct as an arrest made upon full probable cause so as to make admissible evidence found in a search beyond that permitted by *Terry*? Or, if the officer thinks or says at the time that he is arresting, may the government later justify the seizure on the ground that there was sufficient evidence for a stop?

The Supreme Court settled the first of these questions in one of the companion cases to *Terry*, *Peters v. New York*.[119] There an officer left

---

114. United States v. Tobin, 890 F.2d 319 (11th Cir.1989), rev'd on other grounds, 923 F.2d 1506 (11th Cir.1991)(where the defendant's suspicious conduct occurred in his home, police could not make nonconsensual entry on reasonable suspicion to talk to him; "*Terry* analysis does not apply to intrusions into the home * * * because an individual's residence enjoys special protection under the Fourth Amendment"); State v. Davis, 295 Or. 227, 666 P.2d 802 (1983); State v. Beavers, 859 P.2d 9 (Utah App. 1993).

However, perhaps threatening entry is permissible. In Hamlet v. State, 490 N.E.2d 715 (Ind.1986), involving a "warm" pursuit of those suspected of a just-completed armed robbery of a fast food restaurant a few blocks away, the 3 suspects exited the home after police threatened to unleash police dogs therein. The suspects were then identified by witnesses to the robbery. The court concluded that "it was not unreasonable to take the precaution of ordering them from inside the residence under the circumstances presented here," as there were exigent circumstances in terms of a risk of harm to others, "the potential escape of the suspects before they could be identified," and the fact that "evidence could be destroyed."

115. People v. Thompson, 221 Cal. App.3d 923, 270 Cal.Rptr. 863 (1990)(upholding officer's conduct where he "hopped over" a 3½ foot chain link fence in the rear yard" where grounds to detain person seen there); Matter of Gregory S., 112 Cal.App.3d 764, 169 Cal.Rptr. 540 (1980)(officer could come 20 feet up driveway into curtilage and even remain after being ordered to leave, as grounds for investigative detention there); State v. Ryea, 153 Vt. 451, 571 A.2d 674 (1990)(officer, believing defendant driving on suspended license, properly approached defendant after he pulled into his driveway).

116. See § 5.2.

117. See § 9.4.

118. See § 9.5.

119. 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

46

000297