*Edward O. Mott*
*POLICE PRACTICES EXPERT*
*227 Bellevue Way NE., Suite 49*
*Bellevue, Washington 98004*
*eomott@msn.com*
*425-452-9116*

# REPORT
### Kodiak Police Department
### Incident Report on Driving Under the Influence of Intoxicants
### Scott Brown vs. Frank Peterson, etal.
### Kodiak Police Department Case Number 3KO-03-12
### Civil No. A05-0002 CV (RRB)

**Edward O. Mott**
**Retired Detective Lieutenant**
**Bellevue Police Department**

This report is on behalf of Robert Herz, P.C., Attorney at Law, Anchorage, Alaska, in the matter of Scott Brown vs. Frank Peterson et al. The date of the incident was, Saturday, January 4, 2003.

## Introductions & Qualifications

My name is Edward O. Mott. My career in law enforcement consisted of 32 years of continuous police service. I was a law enforcement officer for the city of Issaquah, for 11 years and served one of those years in the capacity of Acting Chief of Police. The next 21 years, I was an investigator for the City of Bellevue Police Department. During that time, I was promoted and continued my career as a Detective Lieutenant in the Major Crimes Unit. I have investigated or managed the investigation of over 31 murder cases, many of which involved multiple victims. I have supervised the investigation of over 200 death cases involving natural causes, suicide, and industrial accidents I conducted the first serial murder case in the history of Bellevue, Washington, and also, the first serial murder case to be prosecuted in the State of Washington using DNA evidence.

My experience as an expert witness is in the area of crime scene interpretation, evidence processing, excessive use of force, and police practices. I am qualified as an expert witness in Superior Court in Washington, California, Nevada, Arizona, and Colorado, in Excessive Use of Force by police, and Proper Police Practices.

A detailed statement of my qualifications, experience, and training, along with a list of all publications, are attached hereto as Exhibit A. My areas of expertise in the Police Arts and Science include, but are not limited to, Police Administration, Policies, Practices, Procedures and Standards of Care, Internal Investigations, and Discipline.

**Exhibit 1**
**Pg. 1 of 7**

**Documentation**

I have been retained to review the facts and circumstances of the Scott Brown vs. Frank Peterson et.al. case by Mr. Robert Herz, who is a private attorney practicing law in the City of Anchorage, Alaska. At the time of this report, I have discussed the matter with counsel briefly so as to have a general understanding of this matter. However, my opinions are based upon the materials that I have received and reviewed and upon my education, training, experience, and background. I have reviewed the documents provided to me by Mr. Herz, a list of which I can provide upon request. My background, experience, education, and training qualifies me to render opinions about police traffic patrol practice and procedure, investigatory stops, assessment of probable cause, proper police report writing, proper dispatch practices including dispatch log entries, lawful warrantless entries into residences, lawful warrantless arrests, lawful use of force including OC Spray, among other things.

It is my customary practice to evaluate the objective reasonableness of police conduct on a case-by-case basis from the prospective of the police reviewing authority. In conducting that evaluation, I apply:

- My training and experience as a police supervisor who was assigned to conduct internal investigations
- My training and experience as a police supervisor and commander who was assigned to train police officers on use of force and effecting controlled arrests.
- My training and experience as a police supervisor and commander who evaluated the performance of my subordinate police officer
- My training and experience as Chief of Police who hired, trained, assigned, administered and terminated police officers as necessary.
- My training and experience as Chief of Police who developed and administered policies and procedures for directing police officers under my command
- My training and experience as Chief of Police who reviewed internal investigations and made the final administrative decisions on whether to sustain or not sustain allegations of misconduct.
- My continuing education and training has been supplemented by my ongoing review of professional publications that address contemporary developments in my area of expertise.

**Documentation Review:**

I have reviewed the Kodiak Police Department incident that occurred on January 4, 2003. My conclusions are based on my education, skills and knowledge acquired during my career with the Bellevue Police Department, Bellevue, Washington. Additionally, and independently, my opinions are based in part on the opinion of expert Cynthia Strout whose report I have reviewed. My curriculum vitae are attached.

The police officers and dispatchers in this case and in particular Frank Peterson failed to follow what would be considered fairly standard and proper police procedures in this case. In some instances departmental policies were not followed. Among other things, Officer Peterson made

2

an unlawful warrantless enty in Mr. Brown's home, he made an unlawful warrantless arrest of Mr. Brown, and he failed to use good solid officer safety procedures in dealing with Mr. Brown and thus ended up using excessive force, along with Officer Holden against Scott Brown. Officer Peterson omitted what would be considered basic, appropriate and standard information for writing an accurate and complete Affidavit in support of a complaint for DUI and in writing his narrative police report. These omissions are glaring and contraindicative of the claim of DUI made by Officer Peterson. He also failed to collect relevant and pertinent physical evidence supporting the DUI charge.

**Factual Summary:**

The following factual summary highlights some of the pertinent facts upon which the conclusions in this report are based. This is a summary and I have not tried to list each and every fact that could possibly support my conclusions. However, the facts described here are sufficient to allow me to reach a conclusion in this case.

This case occurred on January 4, 2003 at approximately 4:53 p.m. with a phone call reporting a gold colored flatbed pickup truck driving recklessly. The report mentioned the vehicle was "fishtailing" in the road and had lost control and spun in a circle in the roadway. The caller reported the vehicle had driven up Pillar Mountain road. The caller also gave a description of the driver of the vehicle which matched the description of the defendant. The caller also said the driver "may be intoxicated." It was winter in Kodiak, Alaska. The roads were icy and slippery. It would be expected that cars or trucks might fishtail and spin out so there was no other information in the call that supported the caller's speculation that the driver "might be intoxicated."

Officer Peterson wrote in his Affidavit, in support of the DUI Complaint, that he received a report of a reckless driver in the area of Pillar Mountain Road. Officer Peterson wrote in his police report that the driver was reported as driving recklessly. Officer Peterson omits from the affidavit and from the police report any mention of the driver possibly being intoxicated.

Officer Peterson went to Pillar Mountain Road and observed a gold colored flatbed pickup truck driving down the road. He states in his Affidavit that he followed the vehicle to Madsen Road and to Purtov Road. Officer Peterson then wrote in his Affidavit he observed the vehicle pull into 1219 Purtov Road. He writes, "I observed a male leave the driver's side of the vehicle. Later he identified the man as, the defendant, Scott Brown. Officer Peterson does not claim to observe any reckless driving and review of the dash mounted camera video reveals none. Officer Peterson does not independently corroborate the caller's claim of reckless driving. Officer Peterson observes nothing that would give him a legal basis for making an investigatory stop of Mr. Brown's vehicle.

Officer Peterson also writes in his Affidavit that he yelled to the defendant and instructed him to stop. The defendant continued into his residence and according to Officer Peterson he followed him. Officer Peterson stated he contacted the defendant and noted the strong odor of alcohol on the defendant's breath, and the defendant's eyes were bloodshot and watery. His speech was slurred and he swayed where he stood.

3

What Officer Peterson left out of his Affidavit or report was that he made a warrantless entry into Scott Browns house. He fails to state anywhere in either document the legal basis upon which he relied in making this warrantless entry into Mr. Brown's home. It appears uncontested that Peterson did not have consent to enter the home.

According to Mr. Brown, he went straight into the bathroom, shut the door and stayed in the bathroom for possibly 7 minutes. While using the bathroom Scott Brown claims that he consumed a better part of a 5th of Jack Daniels Whiskey. Mr. Brown asked Officer Peterson several times to leave his residence and that Peterson had no right to be there. Wade Brennick testified at the DMV administrative hearing and at trial. Wade Brennick testified that he was with Mr. Brown for about a half hour or so shortly before the incident at Safeway. The time frame on all of this was very short, i.e., the call from Safeway to Kodiak PD came in at 4:53 and Mr. Brennick testified that at about 4:30 Scott was sober and not drinking any alcohol.

When Brown exited the bathroom, he was confronted by Officer Peterson standing at the door. Officer Peterson reported that Brown stated he was in his house and he could drink if he wanted to. Mr. Brown got a beer and Peterson told him not to drink it. Peterson told Brown that he was under arrest for DUI. Mr. Brown opened the beer and proceeded to drink it. Officer Peterson reports in his Affidavit in support of the complaint of DUI, that he took the beer from Scott Brown and placed him under arrest.

Officer Peterson omitted that fact that in taking the beer from Scott Brown he sprayed him with O.C. Spray. A struggle ensued and Officer Peterson called Officer Holden for backup. Peterson called twice for help. There is nothing in any dispatch records to indicate that Officer Peterson was dispatched for a possible drunk driver or on a REDDI call (Report Every Drunk Driver). The first mention in the dispatch records occurs when Officer Holder is dispatched. The dispatcher makes a note then of "REDDI." Officer Holden arrived at the house and writes in his report he could smell the order of Pepper Spray O.C.

At 1707 hrs Officer Holden arrived at Brown's house, 1219 Purtov. He indicated he ran into the house and observed Officer Peterson trying to handcuff Mr. Brown. Officer Holden stated in his report that Brown had tried to pull away from him. Officer Holden then used his Pepper Spray and gave Brown a short blast in the face. Brown yelled but Officer Peterson was able to apply handcuffs on Brown.

Alaska State Trooper Alan Jones came into the house. Holden asked the trooper to check a man who was lying on the floor. It appeared D. Brown (who was the brother of Scott Brown) was having a reaction to the pepper spray. Officer Holden assisted Officer Peterson in placing Scott Brown into Peterson's patrol vehicle. During this process, according to Mr. Brown and his wife while Brown was being brought out of his house his pants fell around his legs, and the officers did nothing to rectify the problem. D. Brown was transported to the hospital.

I did not find any reports to indicate that any officer seized the can of beer into evidence or seized the bottle of Jack Daniels Whiskey or the bottle of Cologne that was in the bathroom.

4

As depicted in the video tape, for the next two hours, after the initial contact, the defendant gave a sample of his breath with a reading of .185 of blood alcohol weight.

On or about April 3, 2003, Judge Hopwood characterized Peterson's testimony as "mistaken" and his omissions are "remarkable". Judge Hopwood heard a motion to suppress and decided the entry into the home was a clear violation of Mr. Brown's fundamental Fourth Amendment rights.

These underlying facts were used to indict Mr. Brown for Perjury based on Mr. Brown's testimony at the DMV Hearing where he stated he only started drinking after arriving home. Judge Fuld found that the evidence was obtained after a flagrant violation of the Alaska and United States Constitutions: "Here, Mr. Brown was in his home and the Officer entered to question Mr. Brown. The Officer did not ask for permission and none was given. The Officer did not seek a warrant. Judge Hopwood concluded the Officer did not have any knowledge of a suspected DUI. This was not a technical violation of a court created right. This was a substantial violation of a fundamental constitutional right. A door of the home represents a firm constitutional barrier whether or not it is open."

**Summary**

In summary, this report outlines a failure in what should be considered standard police procedures and practices. Based upon my training, experience and careful evaluation of the totality of the circumstances in this matter, it is my considered opinion that Officer Peterson made an unlawful warrantless entry of the house when the only thing he knew about Mr. Brown was that there were reports he had been driving erratically. There was no applicable exception to the warrant requirement. The officer could not make entry based on a "hot pursuit" exception, and any reasonable officer properly trained would have known this. Officer Peterson himself did not observe any erratic driving. Furthermore, at the point of entering, Officer Peterson had not had any personal contact with Mr. Brown for the purpose of making any assessment of alcohol consumption. So the statutory exception to make entry for purposes of a DUI arrest could not have been met based solely upon a hearsay report of reckless driving. The reckless driving, if it occurred, did not occur in the officer's presence, so he had no basis for making an arrest on a reckless driving charge. Even if such a basis existed, this did not provide a basis for making a warrantless entry into Mr. Brown's home. From my review of the materials provided, including the videos, I agree with Judge Hopwood that there is no basis for any claim that Mr. Brown was eluding Officer Peterson while he was driving. In addition, Mr. Brown is free to break off police contact and walk away when he is not subject to a lawful investigatory stop. Here there was no basis for initiating an investigatory stop of Mr. Brown since the reckless driving report had not been corroborated. Again, any reasonable officer properly trained would have known these things. There was no lawful basis for making a warrantless arrest inside Mr. Brown's home. The law in Alaska and elsewhere is well established on these points.

It should be noted that Alaska's Statutes on the arrest process are relevant here. The uncontested facts make it clear that when he entered the house, Officer Peterson had not seen a crime committed in his presence. Therefore, he had no grounds for an arrest without a warrant under AS 12.55.030. Furthermore, there was nothing to indicate the involvement of alcohol and hence no probable cause to believe that Mr. Brown had been operating his vehicle while intoxicated.

Therefore, there were no grounds for an arrest without a warrant under AS 12.25.033. Lastly, it is clear that Officer Peterson did not ask permission to enter and then did not announce his authority and the purpose of his entry. This means that when he essentially broke into Brown's house he did so in violation of AS 12.25.100.

Because Officer Peterson had no lawful basis for entering Mr. Brown's home to either investigate a crime or to make an arrest and because Officer Peterson had no lawful basis for making an arrest, any amount of force used to make an arrest and the mere act of making the arrest constitutes excessive use of force in this case, and constitutes assault and false arrest.

In addition, in my opinion both officers used excessive force in using OC spray against Mr. Brown. OC spray can be properly deployed under a few circumstances none of which pertained in this case. Use of OC Spray would be proper when the subject actively resists arrest, or when the subject manifests the intention to actively resist arrest. Here, Mr. Brown only said he can drink a beer in his own home if he wanted to, and then proceeded to do so. This does not constitute active resistance to arrest under Alaska law. OC Spray can be properly deployed when the subject refuses to comply with an officer's *lawful* commands if compliance with those commands is under the existing circumstances, essential to the safety of the subject, the officer or the public, and other means of obtaining compliance are ineffective or not feasible. No command was lawful in this case since the officer did not have a right to be in Mr. Brown's home. Even assuming the command was lawful, compliance with the command was not essential to officer or subject or public safety. OC Spray can also be properly used when the subject is attacking or is about to attack, the officer, a fellow officer or some other person. A circumstance that did not exist here. Moreover, except under extreme conditions, OC spray should not be employed when other officers are within the spray area. Also, wherever possible, the use of OC spray should be avoided in circumstances where innocent bystanders may be affected by it. Holden deployed spray with Peterson in close proximity, and Scott Brown's brother was overtaken by fumes in the kitchen area, not to mention Scott Brown's wife was sitting in the same area. Use of OC spray devices should be avoided in small enclosed areas and in any location where an open flame or other source of possible combustion is present.

This review of the facts demonstrates that at best Officer Peterson was merely investigating a possible crime of reckless driving, a misdemeanor not committed in his presence, when he entered the house. Officer Peterson did not have probable cause to believe Mr. Brown was driving while intoxicated since all he had was hearsay reports of erratic driving.

I do not find Officer Peterson credible when he claims that he was dispatched to investigate a possible intoxicated driver. Officer Peterson has a history of not following departmental policies and procedure and not understanding fourth amendment seizure law. This is in part demonstrated by his conduct in becoming involved with a sixteen year old high school student while serving as a police officer in the DARE program at the local high school. As a consequence of that conduct he was demoted and not allowed to work at the school. It is also demonstrated in his conduct as described in Cousins v. Alaska, MO & J No. 5090, July 12, 2006, where Officer Peterson conducted an unlawful investigatory stop and violated the fourth amendment rights of several juveniles. In this case any reasonable and properly trained officer would have included information about the report of an intoxicated driver in an affidavit in

6

support of complaint for DUI and would have included such information in a police report. The fact that it does not appear anywhere in any such report authored by Peterson suggests that it is more probable than not that Officer Peterson did not have any such information before entering into Mr. Brown's home. Any standard and basic police report would contain such information and it is conspicuously missing in this case. In addition, any reasonable and properly trained dispatcher would have included such information in their dispatch logs and/or radio logs, showing that contemporaneously at the time of dispatching the responding officer that the officer was responding to a possible intoxicated driver. This information is conspicuously missing as well, and I find Dispatcher Croyle's claim that he told this information to Peterson not credible under the circumstances.

I am prepared to testify to these opinions in a deposition or at trial if called upon to do so. If I am provided with further documentation for my review, I may have additional opinions.


**Edward O. Mott**