**Cynthia Strout**
**Attorney at Law**
**733 West Fourth Avenue, Suite 401**
**Anchorage, Alaska 99501**
**Ph. (907) 276-0377**
**FAX (907) 276-1206**

## REPORT OF CYNTHIA STROUT

### *SCOTT BROWN vs. FRANK PETERSON ET. AL.*

I have been asked to review this matter and offer my expert opinion regarding several issues relating to the in-home warrantless arrest of Mr. Scott Brown in Kodiak, Alaska on January 4th, 2003. My resume is attached to this report. I have reviewed the materials provided to me by Mr. Herz, a list of which I can provide upon request.

The pertinent procedural history of the case is as follows:

1. Mr. Brown was arrested on January 3, 2003 and charged only with one count of Driving While Intoxicated.   Officer Peterson was the arresting officer. He received information from a dispatcher that a citizen had called and reported that Brown's truck had been seen driving recklessly. Officer Peterson drove to the area and saw the truck. He did not observe any reckless driving personally. Mr. Brown pulled into his driveway and went into his home. Officer Peterson followed him and despite Brown's attempt to close the door followed him in to the home. Officer Peterson eventually pepper-sprayed both Brown and his brother, who had a seizure as a result. Brown was arrested for DWI; he blew a .185 at the station during the processing.

**Exhibit 2**
**Pg. 1 of 16**

2. Based upon this charge, the Department of Motor Vehicles gave notice of intent to suspend Brown's driving license. On February 14, 2003 Mr. Brown had a hearing before the DMV where he testified that he had not been drinking while driving; he testified that he consumed alcohol after he entered his home.

3. Mr. Brown moved to suppress the evidence obtained by Officer Peterson after he entered Brown's home.

4. On March 27, 2003 the prosecutor presented the case the grand jury and charged Mr. Brown with 1 count of Assault in the Third Degree and 1 count of Tampering with Evidence, Case # 3KO-03-12 CR.

5. On April 3, 2003, Judge Hopwood, based upon motion-work and an evidentiary hearing, suppressed all of the evidence flowing from Officer Peterson's entry into Mr. Brown's home. Judge Hopwood found that Officer Peterson did not have any knowledge that Brown might be intoxicated before he entered his home, and that the evidence did not support a finding that Brown was attempting to elude the officer when he entered his home. He further held that there no legal authority for the officer to make a forcible entry into the home to question Brown, as the state had argued. He suppressed all of the evidence obtained from Officer Peterson's illegal entry. As a result of this, it was impossible for the state to proceed with the DWI charge.

6.   On April 25th the prosecutor added a misdemeanor count of Reckless Endangerment to the charges.

2

7. On May 14th, 2003 Judge Hopwood dismissed the indictment ruling that insufficient evidence had been presented to the grand jury to support the Assault 3 count and that suppressed evidence had been used to support count 2.

8. On June 5, 2003 the prosecutor returned to the grand jury and again presented an indictment charging Assault 3, which the grand jury returned.

9. On June 19, 2003 the Mr. Brown was indicted for perjury based upon his testimony at the DMV hearing. The prosecutor presented the evidence which had been suppressed by Judge Hopwood to the grand jury to obtain this indictment.

10. The perjury indictment was dismissed on October 24, 2003 by Judge Fuld, who ruled that the State could not rely upon the evidence Judge Hopwood suppressed to support a perjury charge and that without that evidence there was insufficient evidence to support the indictment.    In order to permit the suppressed evidence in a perjury prosecution, pursuant to ARE 412(2)(A) the state was required to prove that the evidence was not obtained in substantial violation of the rights of the defendant. Judge Fuld ruled that Officer Peterson's entry into Brown's home was a "substantial violation of a fundamental constitutional right" and that the evidence was not admissible.

11. In December 2003 Mr. Brown went to trial on the re-indicted assault third charge and the reckless endangerment charge and was acquitted of both charges.

Based upon the materials provided, I believe the following relevant facts are uncontested:

1. Officer Peterson was notified by his dispatch that a named caller reported a gold colored flat bed truck had been observed driving recklessly;

2. Officer Peterson did not see Mr. Brown commit any crime in his presence when he followed Mr. Brown to his home; i.e. he reported no personal observations of any reckless or careless driving by Mr. Brown;

3. Officer Peterson did not have an arrest warrant for Mr. Brown when he entered his home;

4. Officer Peterson did not have a search warrant for Mr. Brown's home when he entered;

5. Alaska Statute 12.25.030 and .033 authorize a peace officer to make warrantless arrests under the following circumstances[1]:

   a. when a crime is committed in the officer's presence;
   b. when the person has committed a felony, although not in the presence of the officer;[2]
   c. when a felony has in fact been committed and the officer has reasonable cause for believing the person committed it;
   d. for driving while intoxicated if the officer has probable cause to support the arrest.

---

[1] The statute allows for other circumstances, such as domestic violence incidents or violations of bail, not at issue here.
[2] However, see *Johnson v. State,* 662 P.2d 981 (Alaska App.1983), and *Payton v. New York,* 445 U.S. 573 (1979) [arrest warrants must ordinarily be obtained before in-home arrests of felons.]

4

6. In Officer Peterson's initial complaint charging Mr. Brown with Driving while Intoxicated, he did not state that the 911 call received at 4:35 p.m. by his dispatcher had reported anything other than reckless driving. His affidavit states: "On Saturday, 1-4-2003 at approximately 4:53 p.m. the Kodiak Police Department received a report of a Gold colored flatbed truck driving recklessly. The report mentioned the vehicle was fishtailing in the road and lost control and spun in a circle in the road. The caller reported the vehicle had driven up Pillar Mountain road. The caller gave a description of the driver which matched the description of the defendant.";

7. Neither Mr. Brown nor anyone else consented to Officer Peterson's entry into his home;

8. No emergency had been reported at Mr. Brown's home.

I have been asked to offer opinions on several issues. Each issue with my opinion is offered below.

## I. WERE THERE ANY LAWFUL EXCEPTIONS TO THE WARRANT REQUIREMENT THAT PERMITTED OFFICER PETERSON TO ENTER MR. BROWN'S HOUSE WITHOUT HIS CONSENT?

In my opinion, there was no lawful exception to the warrant requirement that allowed the officer to enter Mr. Brown's home without a warrant. Both Judge Hopwood and Judge Fuld came to the same conclusion. First, because the officer did not personally observe any reckless driving by Mr. Brown, he had no authority to arrest him without a warrant, whether he was inside his home or out. Reckless driving is a misdemeanor. A.S.

5

28.35.400   Our statutes require a warrant for misdemeanor arrests not committed in the presence of the officer. A.S. 12.25.030.

Under these facts, there was certainly no authority for the officer to force his way into Mr. Brown's home. It is well settled in Alaska that "The door of a home, even if open, presents a firm constitutional barrier to police searches unless conducted pursuant to a warrant or within an exception to the warrant requirement." *State v. Spietz*, 531 P.2d 521, 525 (Alaska 1975). See also, *Erickson v. State*, 507 P.2d 508, 515 (Alaska 1973). The Alaska Supreme Court has consistently interpreted our search and seizure protection as "broader in scope than that guaranteed in the federal Constitution," *Woods & Rohde, Inc. v. State, Dep't of Labor* 565 P.2d 138, 150 (Alaska 1977) (extending search and seizure protection to commercial property); see also *Reeves v. State*, 599 P.2d 727 (Alaska 1979) (expanding limits on preincarceration searches); *Jackson v. State*, 791 P.2d 1023 (Alaska App.1990) (limiting pat-down searches and rejecting the bright-line rule adopted by the U.S. Supreme Court in *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)).

This broader protection is unnecessary here, since the officer's conduct violated constitutional protections well established under federal law as well. "A warrantless, nonconsensual entry and search of a private residence is presumptively unreasonable in the absence of probable cause and exigent circumstances." *Welsh v. Wisconsin*, 466 U.S. 740, 748-49, 104 S.Ct. 2091, 2096-97, 80 L.Ed.2d 732 (1984). Even in cases where an officer has probable cause to arrest a person for a *felony* offense, under both the federal

6

and Alaska Constitution, an arrest warrant must ordinarily be procured.  See, *Payton v. New York,* 445 U.S. 573 (1979) and *Johnson v. State,* 662 P.2d 981 (Alaska App.1983).

## A. THERE WERE NO EXIGENT CIRCUMSTANCES EXCUSING THE WARRANTLESS ENTRY.

The primary exception to the warrant requirement asserted by the state in the litigation in Kodiak was the "hot pursuit" exigency which has been held, when applicable, to be a valid exception. *Gray v. State* 596 P.2d 1154, 1155 -1157 (Alaska, 1979).  Both of the judges which reviewed this issue, Judge Hopwood and Judge Fuld rejected this contention and rightly so. The facts here do not support the application of this exception.

First, Officer Peterson was not in hot pursuit of anything, as that term is used in this context. All Officer Peterson knew, before he contacted Brown within the home, was a hearsay report that a person had seen Brown's truck being driven erratically. The officer's own observations of the driving did not support this. The officer's police report states, "...I observed two vehicles coming down Pillar Mountain Rd. [the second vehicle matched the description given by the 911 caller] I turned my vehicle around and followed the vehicle. I rounded the corner on Pillar Mtn. Road, which turned into Maple Street. I observed the vehicle turn onto Madsen Street. I illuminated my overhead lights and followed the vehicle. I observed the vehicle turn onto Purtov Rd. and followed it. I observed the vehicle turn into the driveway of 1219 Purtov Rd." No where does the officer note any reckless driving when he had the truck in his sight.

7

This is confirmed in his affidavit supporting the DWI charge, where the officer stated, "I went to Pillar Mtn. Road and observed a gold colored flat-bed pickup truck heading down the road. I followed the vehicle to Madsen Road and to Purtov Road. I observed the vehicle pull into 1219 Purtov Road. I observed a male leave the driver side of the vehicle. I later identified the male as Scott Brown."

The two Supreme Court cases which established "hot pursuit" as a limited exception to the warrant requirement are *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) and *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976). These decisions both involved fleeing felons and were based not only on the concept of hot pursuit but also on separate emergent considerations which, when coupled with the pursuit, justified the warrantless intrusion. In *Warden*, both flight and injury to innocent members of the public were strong possibilities even after the armed robber had entered his home. In *Santana*, destruction of valuable evidence (heroin and marked bills) was likely to occur if the police waited for a warrant to arrive before entering the defendant's home. These cases are totally distinguishable from this one. Here, there was no apparent danger--the officer had observed no reckless driving and he knew the driver had left the truck and had gone into a house. He had only a hearsay report about the reckless driving. It was January in Kodiak; it is safe to assume that roads can be slippery that time of year and that drivers may skid based on bad conditions alone. There was no evidence, based on what the officer knew before he entered, to be destroyed.

In *Gray v. State* 596 P.2d 1154, 1155 -1157 (Alaska, 1979), our court outlined the criteria for determination of the hot pursuit exception in a case involving the search of a get-away car to a robbery. The court held that the state must show the commission of a grave offense, a clear showing of probable cause that vehicle in question is getaway car, a reasonable belief that the suspects were armed, and the likelihood that the suspects will flee if not speedily apprehended, and a peaceable entry. The court relied upon *United States v. Robinson*, 174 U.S.App.D.C. 351, 533 F.2d 578, Cert. denied, 424 U.S. 956, 96 S.Ct. 1432, 47 L.Ed.2d 362 (1976) a case also involving the search of a robbery get-away car. The *Robinson* court was careful to distinguish such "hot pursuit" searches from warrantless home invasions: "This [the search of a car] stands in contrast to a situation in which the police reasonably believe an offender is in an apartment or hotel room, and can by modest resources keep guard on him while obtaining a warrant." *Robinson* at 585 n.16

This formulation is consistent with the general rule that the hot pursuit exception requires that the police be investigating a serious offense, and that the officers are actually in pursuit of the suspect based upon that offense. Here, since Brown was initially charged only with DWI, the evidence of which was developed only **after** Officer Peterson entered the home, it seems apparent that the officer was not 'pursuing' him for any other crime.

In *Welsh v. Wisconsin, supra,* the police arrested a defendant in his home without a warrant after a witness to a motor vehicle accident in which defendant was involved

9

said that he appeared to be drunk or sick as he walked home from the scene. In invalidating defendant's conviction for refusal to undergo the breathalyzer test, the Supreme Court reaffirmed the principle that exceptions to the warrant requirement are extremely rare and "that the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." It concluded that except in the case of a very serious crime, a warrantless home arrest cannot be upheld. *Id* at 341.

Here, the officer did not have probable cause to believe that Brown was driving while intoxicated; all he had was a hearsay report about erratic driving that was not borne out by his personal observations. If the warrantless entry in *Welch* was improper, as the Supreme Court held it was, it was even more improper here.

In *MOA v. Reekie* 1999 WL 91810 (Alaska App. 1999)[3] the Alaska Court of Appeals upheld the lower court's ruling that exigent circumstances did not justify a warrantless entry into a garage under more compelling circumstances than presented here. There an off-duty police officer personally observed Reekie driving erratically and followed him into an attached garage without a warrant. The city conceded, in the trial court, that Reekie had an expectation of privacy in the garage. The Court of Appeals held that even if Reekie did not have such an expectation, probable cause to arrest Reekie would still not justify a warrantless entry into his garage unless exigent circumstances

---

[3] Alaska R. App. P. 214 does not forbid judges and lawyers from relying on unpublished decisions for whatever persuasive power those decisions might have.
*McCoy v. State* 80 P.3d 757 (Alaska App. 2002)

required an immediate entry, citing *Ingram v. State*, 703 P.2d 415, 422 (Alaska App.1985), aff'd, 719 P.2d 265 (Alaska 1986).   The court noted that in assessing the need for immediate action, the totality of the circumstances must be examined, balancing the nature of the exigency against the intrusiveness of the warrantless entry.   The court held that no exigency had been established to justify the warrantless entry into even the garage, much less into a person's home. There, the officer had personally observed very erratic driving and so clearly had probable cause to arrest for reckless driving; Officer Peterson here had made no such observations and was relying solely on a hearsay report. When the totality of the circumstances are balanced here, it is clear that the entry was unconstitutional.

Similarly, the New Jersey court in *State v. Bolte* 560 A.2d 644 (N.J. App. 1988) held such an entry to be unconstitutional. There, unlike here, an officer personally observed the accused driving somewhat erratically. The driver pulled into his driveway and activated a remote garage door opener and entered his garage. The officer following him ran under the garage door as it was closing and eventually arrested the driver for DWI. The court held the warrantless entry unconstitutional under the federal and state constitutions. The court stated that the officer did not have probable cause for a DWI arrest before entering the home, since erratic driving alone is insufficient for such a finding. In addition, the court held that even if the officer had probable cause for DWI, the entry would be improper, noting that exceptions to the warrant requirement are

11

extremely rare and "that the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." citing *Welch, supra*.

Here, as stated in *Welch*, and in *Reekie* and *Bolte*, the intrusion failed to meet the Fourth Amendment standard of reasonableness. If the officer believed he had probable cause to arrest Mr. Brown for a driving offense he should have applied for an arrest warrant. His hunch or suspicion that other crimes might be afoot does not permit a forced warrantless invasion of the home.

### B. THIS WAS NOT A PROPER INVESTIGATIVE STOP.

Similarly, the warrantless forced entry into a home cannot be justified as an investigatory-type stop. If the police cannot enter a person's home to arrest him for a felony without an arrest warrant, they surely cannot force entry for someone they think might have driven recklessly. Even with "abundant probable cause" to believe a person has committed a felony offense, a warrant is still required before the home is invaded. As both Judge Hopwood and Judge Fuld held, no authority allows the police to make a forced investigative entry into a home. Even if the officer had probable cause to arrest Mr. Brown for reckless driving, which seems unlikely, he would be required to obtain a warrant. To allow forced entry on even less evidence is insupportable.

12

## C. THE STATE'S ARGUMENT BELOW THAT THE OFFICER COULD ENTER THE HOME WITHOUT A WARRANT BASED UPON AN "ELUDING" THEORY IS UNSUPPORTED IN THE LAW

In the trial court, the state argued that Officer Peterson had probable cause to arrest Brown for failing to stop at the direction of a police officer, in violation of A.S. 28.35.182(b), which states:

> A person commits the offense of failure to stop at the direction of a peace officer…if the person…while driving a motor vehicle…knowingly fails to stop as soon as practical and in a reasonably safe manner under the circumstances when requested or signaled to do so by a peace officer.

Judge Hopwood found that the officer did not have probable cause to arrest Brown for this offense. This was correct. The court found from the video produced by the officer that Brown was already pulling into his driveway when he would have become aware of the officer behind him, and this is supported by my review of the video as well. The elements of eluding were simply not proven based upon these facts.

The fact that Officer Peterson yelled at Brown to stop [and that he did not] does not establish an eluding offense and not provide grounds for a warrantless entry into the home. If the police have no objective justification for seizing a person, the person is free to walk away, which is what Brown did. The defining quality of a police-citizen "encounter" is that the citizen retains the right to end the contact and walk away. *Coleman v. State*, 553 P.2d 40, 46 (Alaska 1976). The police cannot embark upon an illegal investigatory course of action, particularly involving a warrantless entry into a

13

home, "in the hope that something might turn up." *Brown v. Illinois*, 422 U.S. 590, 605, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416, 428 (1975).

Cases from other jurisdictions hold that the government can not impose criminal penalties on a citizen for exercising Fourth Amendment rights, even though the citizen's exercise of those rights may "delay" or "obstruct" a police investigation. *See, e.g., People v. Hilgenberg,* 585 N.E.2d 180, 186 (1991), where the court held that a person could not be convicted of "obstructing a peace officer" for failing to open their door at the officer's request or otherwise allow the officer's warrantless entry into their premises to conduct an investigation. *See also United States v. Prescott,* 581 F.2d 1343, 1350-51 (9th Cir.1978):

> It cannot be a crime ... for a citizen to refuse entry to his or her home to a law enforcement officer who does not have an appropriate warrant.... One cannot be penalized for passively asserting this right, regardless of one's motivation. Just as a criminal suspect may validly invoke his Fifth Amendment privilege in an effort to shield himself from criminal liability, so one may withhold consent to a warrantless search, even though one's purpose be to conceal evidence of wrongdoing.

## D.  NO OTHER EXCEPTION TO THE WARRANT REQUIREMENT EXISTED

It is clear from the facts, and the state never contended otherwise, that Mr. Brown did not consent to the officer's entrance into the home. Likewise, there was no emergency, such as a report of someone wounded in the home. The officer's affidavit in support of the original [and only] charge of DWI makes no mention of any felony he

believed Mr. Brown committed; to the contrary, the only description of any crime occurring before the officer entered the home contained in his sworn statement was a hearsay report that Mr. Brown's truck had been seen driving recklessly. Thus no other exception to the warrant requirement excuses the officer's entry.

## II. THESE LEGAL PRINCIPLES WERE "WELL-ESTABLISHED" PURSUANT TO BOTH FEDERAL AND STATE LAW.

The rule that warrants must ordinarily be obtained before a law enforcement officer enters a home without consent is clearly well established law. The Alaska Supreme court in 1997 specifically held this to be true. See *Van Sandt v. Brown* 944 P.2D 449 (Alaska 1997). The United States Supreme Court held the same thing in 1987 in *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.CT. 3034, 3038-39, 97 L.ED.2D 523 (1987). As Judge Fuld correctly held, the officer's conduct here was a "substantial violation of a fundamental constitutional right."

### CONCLUSION

Officer Peterson entered Mr. Brown's home illegally. The court's that reviewed the entry were correct in holding that no exception to the warrant requirement excused this conduct. The requirements of the Fourth Amendment and particularly of Alaska's stronger protections of the home under Article 1 §14 and 22 of the Alaska Constitution are well-established law. No reasonable officer would have believed the entry here comported with these provisions.

15

Dated at Anchorage Alaska February 27, 2008

Cynthia Strout Bar #826069