Iron Hand Investigations
23254 Northwoods Dr.
Chugiak, Ak. 99567

Scott Randel Brown, Plaintiff                                          03/03/2008
   Vs.
Frank Peterson, Jeff Holden and                                        1 of 8
Kodiak Police Department

My services were requested by Attorney Robert Herz to evaluate the facts surrounding the warrant less entry by Officer Peterson into Scott Brown's residence on January 04, 2003. In particular, to assess the basis for an Investigative Stop. If Officer Peterson had Probable Cause to make a valid warrant less entry into a home. To assess against standards the nature and scope and/or quality of the police report and affidavit filed by Officer Peterson. To assess against standards the nature and scope and/or quality of the dispatch services performed.

I have reviewed Court Documents, Police Reports, Training Logs, Kodiak Police Depts. Field Training Manuals, Kodiak Police Depts Regulations Manuals, Dispatch Tapes, Case Videos and Personal Files.

I would note at the outset what I would consider unprofessional acts by officers of the Kodiak Police Department:

- The failure of supervisors to direct the officers under their command.
- The lack of training to perform duties as assigned to officers.
- The lack of information collected by the officers.
- The lack of relaying information between officers as it was discovered.
- The failure to adhere to the constitutional rights provided by law of a citizen.
- The failure to provide medical care to someone in police custody.

Dispatcher Issues

A dispatcher should obtain as much accurate information as possible in order to prioritize a call. Information to be collected should be in a sequence in order to organize the information of importance so that officers can be dispatched as quickly as possible with the most important information in relationship to the call. It is up to each police departm~ establish this sequence.

I have listened to the three calls to Dispatch that related to the incident i~ ..v.ng Scott R Brown on January 04, 2003. The officer on duty in dispatch was Ofc. Douglas Croyle. It appears that in the Kodiak Police Department the call taker and dispatcher were one in the same on the day of January 04, 2003.

After listening to the calls that Officer Croyle answered for the case involving Scott R. Brown, it is evident that there is no established sequence of questions to ask a caller. If there is, then Officer Croyle did not follow any sequence. The information he gathered from the call by Lori Skonberg was general and without detail. The information he gathered was a gold flatbed truck had spun out of the Safeway parking lot and threw rocks all over a lady. Lori Skonberg followed the truck. She said it was fishtailing and spun a 360 in the roadway

**Exhibit 4**
**Pg. 1 of 8**

(driving recklessly). She thought they might be intoxicated (this opinion was volunteered by her). Its direction of travel was up Pillar Mountain. He also got Lori Skonberg's phone number.

Officer Croyle did not establish:

- The exact time of the incident at Safeway.
- He did not get any additional description of the vehicle to establish a more specific vehicle other than a gold flat bed truck.
- He did not get a license plate of suspect vehicle.
- He did not get any information on the individuals inside the suspect vehicle.
- He did not get any information on the driver of the suspect vehicle.
- He did not ask if medical care was needed for the lady at Safeway.
- He did not ask any questions of why caller thought suspect driver was intoxicated.
- He did not ask caller if there was any thing other information she could provide.

In essence, Officer Croyle did not get enough information to relay to Officer Peterson to establish any Reasonable Suspicion for an Investigative Stop and certainly not enough to establish Probable Cause for Officer Peterson to enter Scott R. Brown's home.

According to Ofc. Croyle, he initially contacted Ofc. Peterson in the police station. Ofc. Croyle has testified that he referred to the call as a REDDI call (term used for citizen report driving while intoxicated). However, Ofc. Croyle does not document anywhere that he dispatched Officer Peterson on a REDDI call. No other information was provided to Ofc. Peterson to narrow down what suspect vehicle he was looking for.

Ofc. Croyle had a call from a second complainant involving the gold flatbed truck at Safeway. The caller described the suspect vehicle as an older goldy beigy flatbed truck with duals on the back. She also said there were two individuals inside the truck. She gave a description of the passenger of the truck as a man with black hair and dark stubble. She described the driver as having bushy blondish hair. No other information was given on the descriptions of passengers of vehicle.

Ofc. Croyle did not get any information on the caller. Officer Croyle again did not follow any sequence of questions for the caller. The suspect vehicle information volunteered by the caller only added that the vehicle had dually wheels and was an older model. When Ofc. Croyle asked the caller if the vehicle had a toolbox, the caller did not know. She did not provide a complete and accurate description of the occupants of the vehicle or the vehicle. The description did not help in establishing a specific vehicle for officers to look for. Ofc. Croyle did not provide any more information to Ofc. Peterson to establish Reasonable Suspicion to make an Investigative Stop and certainly not enough information to establish Probable Cause to make a warrant less entry into Scott Brown's home.

Officer Croyle notes "REDDI" for the first time in the dispatch log when Ofc. Holden is dispatched. Based on the lack of contemporaneous documentation, the poor dispatch procedures followed, and lack of corroboration as described below pertaining to Officer Peterson, I conclude that it is more probable than not that Ofc. Croyle did not dispatch Ofc. Peterson on a REDDI dispatch.

Police Report Issues

There was no mention of REDDI information in Ofc. Peterson's official police report or his Affidavit that he filed in support of the complaint. Officer Peterson notes only that the call was for a reckless vehicle.

A police report by Ofc. Jeff Holden never mentions DUI from dispatch. He reported that only reckless driving was the dispatch. Ofc. Holden was back up officer for Ofc. Peterson.
At no time does Ofc. Peterson say anything about a description of the driver of the vehicle. He also was not aware that a second individual was inside the suspect vehicle until he viewed the patrol car videotape.

In Ofc. Peterson's report he never states that he was informed that the driver of the suspect vehicle might be intoxicated. Ofc. Peterson's report was the first time anyone noted the license plate of the suspect vehicle.

Investigative Stop Issues

There was a lack of basis for making an Investigative Stop. For a reckless driving call it is necessary for an officer to observe a suspect or suspect vehicle in order to establish if the complaint to dispatch was founded. The officer must find the suspect vehicle. He must make a determination if this is the suspect vehicle. He must observe the suspect vehicle for any signs of reckless driving or signs of intoxication of the driver.

With the limited information that Officer Peterson had, it would have been impossible for him to be certain this was the vehicle in the complaint. During what little observation time Officer Peterson had and the distance between him and the other vehicle it would have been impossible for him to determine if the vehicle was being driven recklessly or that the driver was intoxicated. Based on the report written, apparently Officer Peterson did not observe who the driver of the vehicle was, or if there was anyone else in the vehicle. In court documents Officer Peterson admits that he did not observe any traffic violations or any erratic driving of the gold flatbed truck during the time that he was following it. Again, there was no evidence to give Officer Peterson any reason to suspect that a crime had been committed. He had not established Reasonable Suspicion to make an Investigative Stop, let alone any Probable Cause to make a warrant less arrest and nothing to justify a warrant less entry into Scott R. Brown's home.

When Ofc. Peterson first saw the vehicle, it was coming towards him. By the time Ofc. Peterson turned his patrol car around the suspect vehicle was a long distance away. Ofc. Peterson attempted to catch up to the vehicle but lost sight of it on two occasions. In Ofc. Peterson's police report he says nothing about the driving of the vehicle he was following. There is nothing that suggests the vehicle was breaking any laws or being recklessly. Based upon my review of the video there is no basis to conclude that the driver was trying to elude Ofc. Peterson. I agree with the trial court judges conclusion on this issue. Ofc. Peterson did not catch up to the suspect vehicle until it was already parked on private property.

Ofc. Peterson states in his report that he saw "a man jump from the driver's side of the vehicle". He later identified this man as Scott Brown. Although Ofc. Peterson yells at the man to stop, since there is no basis for conducting an Investigative Stop the man has no legal duty to stop. He is free to walk away.

Ofc. Peterson observed that the suspect vehicle was parked crooked in its parking spot. The suspect vehicle was parked on private property and can be parked any way the owner wishes. That standing alone is insufficient to give rise a Reasonable Suspicion that the driver was in anyway impaired.

In reviewing Officer Peterson's official Police Report:

- He was dispatched to find an older gold flatbed truck for reckless driving and the vehicle was going up Pillar Mountain.
- He found a vehicle that, in general, matched the vehicle he was looking for.
- He did not observe the individuals inside the suspect vehicle.
- He did not observe any violation of traffic laws.
- He did not actually see Scott Brown driving but only that Scott Brown was exiting the suspect vehicle after it was already parked.

Ofc. Peterson, by his own police report, has no Reasonable Suspicion to make a lawful Investigative Stop. Information was insufficient to think this was the reported reckless vehicle or that the driver was intoxicated and that any laws had been broken by the driver of this vehicle.

- Ofc. Peterson assumed this was the reckless vehicle.
- He assumed the person he chased into the home was the driver of the suspect vehicle.
- He assumed that there was only one individual in the suspect vehicle.

As previously noted the police report by Ofc. Peterson dated 01-04-2003 had no mention of DUI from dispatch. In an Affidavit by Police Officer in support of Complaint dated 01-06-2003 Ofc. Peterson talks of the dispatch but never mentions DUI information. During another Grand Jury for Assault II testimony dated 03-27-2003 Ofc. Peterson again talks of the dispatch and never mentions DUI. In an Evidentiary Hearing on Motion to Suppress on 04-03-2003, Ofc. Peterson says that he was told by Dispatch that it was a possible DUI. He also admits his police report is not accurate. During Grand Jury for Assault III testimony dated 06-05-2003 Ofc. Peterson again talks of the dispatch but never mentions DUI as part of the dispatch.
Based upon these facts I agree with the trial court and conclude that it is more probable than not that Officer Peterson didn't have any information pertaining to a REDDI call or possible intoxicated driver before entering into Mr. Brown's home. Officer Peterson's testimony to the contrary is not credible on this point.

During trial Ofc. Peterson made this statement in answering the question "When you receive a report from dispatch about a reckless driver, what type of things are you looking for when you make a stop?"

Ofc. Peterson's Answer: "I look for, in this type of situation when I receive a REDDI call or I receive a report of someone driving recklessly, we always try to look for other things, additional things, Probable Cause to stop the vehicle. But not all the time. I don't, I don't need to look for PC (Probable Cause) for myself. I—I try to stop the vehicle for –for their safety, for the safety of the community because I don't want anybody else to get hurt."

The next question was," I'm just trying to ask you what do you look for to tell if somebody needs to be stopped once they are stopped?"

Ofc. Peterson's Answer: "Oh, if I'm looking for –in any other case?
Question: "Yeah, what specifically do you look for, yeah?"

Ofc. Peterson's Answer: "Weaving on the roads, loss of control, driving on the sidewalk, crossing the centerline, crossing the fog line.

By this statement in court it is my opinion that Ofc. Peterson does not understand the constitutional standards that apply to an Investigative Stop. He states that he doesn't believe he needs Probable Cause (which is the wrong standard) to stop any vehicle, that he can stop any vehicle to promote public safety.

- In this case Ofc. Peterson did not observe any weaving on the roadway.
- He did not observe loss of control
- He did not view driving on a sidewalk.
- He did not observe the vehicle crossing the centerline.
- He did not view the vehicle crossing the fog line.

Apparently, he felt he had the authority to just stop the vehicle because he wanted to see if they were intoxicated. He appears to feel he has authority to stop any vehicle to see if something is wrong and apparently this outweighs a citizen's constitutional rights. Apparently, Reasonable Suspicion or Probable Cause isn't needed.

I have also reviewed the Training Records for Ofc. Peterson. I have found that no training has been documented for Ofc. Peterson concerning Law, Constitutional Rights, Probable Cause or First Aide from 11/23/1999 through 05/10/2004.

Officer Peterson did not have a basis for making a lawful Investigative Stop of Mr. Brown's vehicle. He did not have Reasonable Suspicion of any crime before entering Mr. Brown's home. He did not have a lawful basis for making a warrant less arrest of Mr. Brown before entering Mr. Brown's home. Probable Cause did not exist for any crime or for any arrest. He did not have a lawful basis for making a warrant less entry into Mr. Brown's home. I agree with the court on this point. No exceptions to the warrant requirement existed under the circumstances of this case. And I agree with the court on this point as well. "Hot pursuit" does not apply under these circumstances. No exigent circumstances existed to justify the entry. Any reasonable and properly trained officer would have known the appropriate constitutional standards that applied in this case. These standards are well known and well established. In my opinion Officer Peterson flagrantly and inexcusably violated Mr. Brown's constitutional rights under the circumstances.

Supervisory Issues

Sgt. Cary Bradbury was the Shift Supervisor of Ofc. Peterson on January 04, 2003. It is undetermined if Sgt. Bradbury was the supervisor that reviewed Ofc. Peterson's report. The supervisor that did the review on the report should have had concerns with the accuracy of the report and how the case was handled.

1. The fact that DUI was not mentioned as part of the dispatch, and yet the officer charged the accused with DUI.
2. The fact that DUI was not mentioned in the police report or affidavit and yet the officer charged the accused with DUI.

3. The discrepancy between the increased level of force used by the arresting officer and that the officer alleged resisting arrest but this was not part of the charges.
4. The fact that in the report the officer states that he felt the person in custody may have broken his ankle but that apparently no medical attention was provided.


The fact that an officer made a warrant less entry into a private home but no justification was listed or required.

A supervisor that reviewed the police report should have questioned the officer about the report and the handling of this case. The supervisor shows a grave lack of supervision of the officers in this case, including dispatch officers. Ofc. Croyle's performance of his duties was extremely unsupervised. Any Supervisor should have realized that dispatch calls were not being handled properly. Such as:

- The fact that there was no sequence of questions to the complainant.
- The fact that very little information was obtained from the complainant.
- Establishing whether or not the information cards were being filled out correctly by the dispatcher.
- At times dispatch didn't get the personal information of the complainant.
- Whether or not all information was being transferred to patrol officers.


Kodiak Police Department Regulations:

POLICY:

The Kodiak Police Department expects its personnel to maintain high standards of appearance and conduct. The public similarly expects such high standards. Police Officers wield considerable power over its citizenry, power that is carefully circumscribed by state and federal law, and, ultimately, by the Constitution and the Bill of Rights. Our powers to arrest, seize property, and interfere, at times; with the lives of citizens constitute a public trust. We can help insure that we regard this trust as vital by exemplary performance in our jobs. Performance is not enough: we must always conduct ourselves in an exemplary fashion.

In my opinion Ofc. Peterson has violated Policy of the Kodiak Police Department when he violated the constitutional rights of Scott Brown.

Kodiak Police Department Law Enforcement Code of Ethics:

"As a Law Enforcement Officer, my fundamental duty is to serve mankind; to safeguard lives and property: to protect the innocent against deception, against oppression or intimidation, and the peaceful against violence or disorder; and to respect the Constitutional Rights of all persons Liberty, Equality, and Justice."

In my opinion Ofc. Peterson has violated the Kodiak Police Departments Code of Ethics. When Ofc. Peterson violated the constitutional rights of Scott Brown.

General Duties of Kodiak Police Officers:

All Officers of the Department will, at all times, within jurisdictional limits, prevent crime, preserve the peace, protect lives and property, detect and arrest violators of the law, and enforce the laws of the United States, State of Alaska, and all local ordinances, in accordance with the rules, regulations, policies, procedures, directives, and orders as may be issued by the department. Officers will be ever conscious that when they act under "color of law" that the phrase includes not only laws but also policies, procedures, ordinances, common usage, and custom.

Other duties as noted:

**5. All members shall take care to observe and respect the civil rights of citizens, as the term "civil rights" is commonly understood.**

Ofc. Peterson violated this policy. Ofc. Peterson violated Scott Brown's Civil Rights.

**10. On any official matter whatsoever; members shall not knowingly make any false statements or misrepresentation of the facts.**

Ofc. Peterson violated this policy while in court proceedings when he testified that he had received DUI information and the fact that his police report was not accurate.

**16. Officers shall report any use of force to their Superior as soon as practical.**

Ofc. Peterson appears to have violated this policy. He did not radio in his use of force and to a supervisor. Ofc. Peterson appears to have waited to put it in his report. His report appears to have been written two days later. That does not appear to meet the standard of "as soon as practical."

**17. Officers shall render, or cause to be rendered, medical assistance to any injured person.**

Ofc. Peterson appears to have violated this policy. Officer reported thinking Scott Brown had a broken ankle, but it does not appear that he ever offered medical attention to Scott Brown.

DUTY:

**10. Officers, while on duty, shall constantly keep the dispatcher informed of their whereabouts. To this end, officers will keep their portable radios charged, turned on as appropriate, and in their immediate possession at all times.**

Ofc. Peterson violated this policy. When Ofc. Peterson left his patrol car he did not inform dispatch of his location.

COURTROOM APPEARANCES:

**5. Each member shall be familiar with the laws of evidence and testify truthfully on any matter.**

Ofc. Peterson violated this policy by testifying in court as noted above and again by offering evidence that had previously suppressed by the court in an effort to get Mr. Brown indicted for perjury.

SUMMARY:

Ultimately it is the responsibility of the Chief of Police to oversee the activities within the police department. It is the Chief that sets the requirements for Training, Supervision, Performance of Duties, and Post Orders for his Department. Failures of the line officers within that department can usually be traced back to a failure of the department. Failure to provide officers with proper training, supervision, and requirements for performance of duties and set orders for individual posts is the responsibility of the Department.

It is my opinion that there was a complete failure of the Kodiak Police Department in this case. From policies in effect or not in effect, to the lack of information, verbal and written, to lack of knowledge, to lack of supervision, and the violation of constitutional rights.

Respectfully Submitted,

James L. Ellar
Ironhand Investigations
Private Investigator

Revised: 01/27/2008 to 03/03/2008